F. M. TIPTON, PLAINTIFF IN ERROR, v. THE STATE OF FLOR-
IDA, DEFENDANT IN ERROR.

1. Motions to quash indictments and the ruling of the court · thereon form part of the record proper in a cause, and have no place in the bill of exceptions, and, when evidenced to an appellate court only by a bill of exceptions, such court can not consider them.

2. The gist of the offense of embezzlement, under section 3311 of the General Statutes of 1906, is a breach of trust, and the provisions of this section do not apply to appropria-tion of property by a person unless he held a relation of confidence or trust towards the owner, and had possession of the property by virtue of such relation, and converted it in violation of the trust reposed in him.

3. A person may be a servant or agent de facto, and so be em-braced in the statute punishing embezzlement. He need not be formally appointed as· such. It is enough, if he acts as servant or agent for another, and the other

acquiesces. But one who is not lawfully the agent or servant of another and does not pretend or hold himself out to be such, and holds no relation of trust or confidence towards his alleged principal or master, is not within the terms of the statute.

4. The evidence examined and found not sufficient to sustain a verdict of guilty.

This case was decided by Division B.

Writ of Error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the Court.

*C. L. Wilson* and *J. M. Calhoun,* for Plaintiff in Error;

*W. H. Ellis,* Attorney General, for the State.

PARKHILL, J.: F. M. Tipton, hereinafter called the defendant, was indicted in the circuit court for Jackson county for the crime of embezzlement. He was tried, convicted and sentenced to serve two years in the State prison. From this judgment and sentence he seeks relief by writ of error.

There are nine assignments or error, the first of which is as follows:

1. The court erred in overruling the motion to quash the indictment herein. This motion is evidenced to us in and by the bill of exceptions. It is not found in the record proper. In the case of Hearn v. State, 43 Fla. 151, 29 South. Rep. 433, this court said: As motions to quash indictments are based wholly upon matters of record, and

are addressed directly to the court, demanding a decision directly upon the matter of record presented, so that the motion itself, the matter it presents and the ruling of the court thereon all appear of record, such motions and the rulings thereon form part of the record proper, in the cause, and have no place in the bill of exceptions, and when evidenced to an appellate court only by a bill of exceptions such court can not consider them. Raines v. State, 42 Fla. 141, 28 South. Rep. 57 Brown v. State, 42 Fla. 184, 27 South. Rep. 869; Olds v. State, 44 Fla. 452, 33 South. Rep. 296.

The first assignment of error, therefore, can not be considered.

The second, third, eighth and ninth assignments of error are abandoned, and will not be considered.

The fourth assignment of error is based upon the denial of the motion for a new trial.

The third, fourth, fifth and sixth grounds of the motion for new trial have been argued and will be considered together. They are: (3) The verdict is contrary to the evidence. (4) The verdict is against the charge of the court, and is not supported by the evidence. (5) There was no evidence under which the defendant could have been convicted under the second count of the indict-. ment. (6) The evidence shows that defendant was the agent, servant, employee of R. A. Lamb, and not of the Southern Express Company.

The indictment contained two counts. The first count charged that the defendant was the agent, servant and employee of one R. A. Lamb, and as such agent, servant, employee of said R. A. Lamb, had in his custody, care and control a certain sum of money, said money being the property of said Lamb, by virtue of such agency, em-

ployment and hire, and that he fraudulently embezzled, &c., the same. The second count was in all respects like the first, except it charged that the defendant was the agent and servant of the Southern Express Company, a corporation, and the money embezzled by the defendant was the property of the said company, and that the money embezzled came into the possession and control of Tipton by reason of his employment as the agent and servant of the said company.

The court charged the jury in substance that, in order that the defendant be found guilty on the first count of the indictment, the evidence must show beyond a reasonable doubt that the defendant was the agent or servant or employee of R. A. Lamb, that as such agent, servant or employee, he received into his possession or custody by reason of that employment the moneys in which the property or title was in Lamb, and in which Lamb held the special property or the right to the custody by virtue of his employment by the Southern Express Company and embezzled the same. "If, on the other hand, the defendant was an agent, servant or employee of the Southern Express Company, and as such servant, agent or employee, received into his custody or possession by virtue of that employment money belonging to the Southern Express Company and fraudulently embezzled or converted same to his own use or secreted with intent to do so, and that it occurred in Jackson county, Florida, and within two years immediately before the indictment was found, then the jury should find the defendant guilty under the second count of the indictment."

The verdict was: "We, the jury, find the defendant guilty as charged in the second count."

The defendant urges that the defendant, if guilty at all,

was not guilty under the second count, because he was not the agent of the express company, but the agent or servant of Lamb, who was the agent of the said company. The state maintains that though the evidence shows that the defendant was in charge of the express company's office by virtue of this employment, by Lamb, he was the agent of the express company *de facto.*

One C. G. McCormick, who was the route agent for the Southern Express Company, and checked up the express office at Grand Ridge and found the shortage there, testified, on the point of agency or employment of Lamb and the defendant Tipton, as follows: "I checked Mr. R. A. Lamb on the 2nd day of February, 1905. I found Mr. Tipton in charge of the office when I went there. Mr. Tipton was there while I was checking up the office. He gave me check and cash and check to balance the amount due, and I gave him a receipt. I made out the receipt *to the office.* That money was the money of the Southern Express and Mr. R. A. Lamb was the agent. The Southern Express Company looked to Mr. R. A. Lamb for the money from the office. This shortage was paid up by Mr. R. A. Lamb. He sent me the money."

R. A. Lamb, upon the question of agency and employment, testified: "I live at Grand Ridge, Florida. I was the agent for the Southern Express Company, a corporation, at that place. This boy Tipton was my employee on a salary of $22.00 per month during the time I was agent for the company. It was my duty to sign or issue express money orders. They were usually issued and signed by the defendant, *in my name and with my consent.*. He started to work for me on the 8th of December, 1904. He had done practically all the work in the office. I employed him myself on a salary of $22.00 per month for the time

he was with me. * * * I was agent for the express company, he was not. I took express money and R. R., he did all the work. I was responsible. The money was mine until it was turned over to the express company. I staid in the office when Tipton was not there. I drew one or two orders."

The defendant testified that he was employed by the agent R. A. Lamb, that he acted as agent for the company, doing most of the work, and sometimes in his absence Mr. Lamb did the work.

Mr. Bishop in his New Criminal Law, Vol. 2, Sec. 333, says: "In considering whether or not the defendant was a 'servant,' an 'agent' or the like, we should bear in mind that * * * in the law of embezzlement, there can not be a clerk without an employer, a servant without a master, an agent without a principal." 1 Clark's Cr. Law, p. 274, it is said: "The gist of the offense is breach of trust, and it is held that the statutes do not apply to appropriation of property by any person unless he held a relation of confidence or trust towards the owner, and had possession of the property by virtue of such relation, and converted it in violation of the trust reposed in him." "The word agent, as employed in the statute, is used in its popular sense, meaning one who undertakes to transact some business, or to manage some affair, for another by authority and on account of the latter, and to render an account of it." Am. & Eng. Ency. Law, 1st. Ed. 471.

"A person in the employ of another, who in the discharge of his duties is subject to the immediate direction and control of his master, is a servant. The words 'clerk' and 'servant' imply in some one the power of control." Am. & Eng. Ency. L. 1st Ed. 999. According to these principles we hold that the evidence does not show that Tip-

ton was the agent, servant or employee of the Southern Express Company, and did not receive or have custody of the money said to have been embezzled by virtue of his agency or employment as servant or agent or employee of the Southern Express Company, and that he did not hold a relation of confidence or trust towards the' Southern Express Company, as alleged in the second count of the indictment. The evidence is clear that Lamb was the agent of the company, that Lamb employed the defendant to assist him, on a stated salary paid by Lamb. Tipton did not have to render an account of his stewardship to the Southern Express Company. McCormick says, "the Southern Express Company looked to Mr. R. A. Lamb for the money from the office. This shortage was paid by Lamb. He sent me the money."

Lamb said: "This boy Tipton was my employee. I was responsible. The money was mine until it was turned over to the express company." The defendant was subject to the direction and control of Lamb, the agent, not under the direction and control of the express company through Lamb. The company did not know Tipton. He was a stranger to it. He was not employed directly or indirectly by the company, so far as is shown by the evidence. See Regina v. Thorpe, Dears. & B. C. C. 562, cited and quoted in Roscoe's Cr. Ev. p. 449, side page 451.

But it is said that the defendant was the agent or servant *de facto* of the Southern Express Company. In 10 Am. & Eng. Ency. Law, 2nd. Ed. 1002 it is said: "A person may be a servant *de facto,* and so be embraced in the statute. He need not have been formally appointed as such. It is enough to render one a servant *de facto* within this doctrine, if he acts as servant for another, *and the other acquiesces.*" See also page 1006 in same authority.

The evidence shows that the Southern Express Company did not acquiesce in any service by the defendant as its servant or agent. McCormick says distinctly the company looked to Lamb for the money * * * that Lamb was the agent. Lamb says the same thing.

The defendant did not hold himself out as the agent of the company. The money orders were signed by the defendant in Lamb's name and with Lamb's consent. He received the money in the course of his employment for Lamb and paid it over to Lamb. The defendant was not the agent in fact, neither was he the pretended agent, or *de facto* agent of the express company.

The defendant could not legally be found guilty on the second count of the indictment. The evidence does not sustain the verdict. The verdict is contrary to the charge of the court.

The judgment is reversed and a new trial awarded.

TAYLOR and HOCKER, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.