D. F. DUNKLE, *Plaintiff in Error,* v. STATE OF FLORIDA, *Defendant in Error.*

Division B.

Opinion filed November 21, 1929.

*Blackwell, Donnell & Moore,* and *Loftin, Stokes' & Calkins,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General and *Roy Campbell,* Assistant, for Defendant in Error.

BUFORD, J.—This case comes to this Court on writ of error from a judgment of the Criminal Court of Record of Palm Beach County. As the record originally appeared there was no judgment of conviction. Later the trial court of its own motion lodged and caused to be filed in this court a judgment *nunc pro tunc* which it appears had been made and entered in the court below to correct the minutes in regard to the trial of this cause so as to make the same speak the truth in regard to the judgment rendered against the defendant. In this case the court may assume that the proper judgment was rendered by the court at the conclusion of the trial and that the clerk failed to enter the judgment as rendered. This assumption may be indulged in because the trial judge has so represented the matter over his signature to this Court and such fact is not challenged on the record or otherwise by the plaintiff in error.

The rule appears to be, and we so hold, that a judgment *nunc pro tunc* presupposes a judgment actually rendered at the proper time but not entered and it is a general rule that a judgment *nunc pro tunc* can not regularly be entered unless such judgment has been in fact previously rendered. Cuebas v. Cuebas, 223 U. S. 376, 56 Law Ed. 476; Adams v. Higgins, 23 Fla. 13, 1 So. R. 321. See also Ricou v. Merwin, 113 So. R. 745, 94 Fla. 86.

The information is in three counts. The first count charges Dunkle as agent of Anna Belle Crist with the embezzlement of $11,000.00, the property of Anna Belle Crist. The second count charges Dunkle as officer and agent of Palm Beach Guaranty Company, a corporation, with embezzlement of $11,000.00 of the property of Anna Belle Crist. The third count charges Dunkle as an officer and agent of Palm Beach Guaranty Company with embezzlement of certain notes and mortgages of the value of $14,-

988

000.00 with the conversion thereof and with the embezzlement of the sum of $11,000.00 of the proceeds of such notes and mortgages.

The first count of the information appears to charge embezzlement sufficiently under Section 7247, Comp. Gen. Laws, 1927, Section 5146, Rev. Gen. Stats.

The second and third counts of the information attempt to charge embezzlement under Section 7244, Comp. Gen. Laws 1927, 5143 Rev. Gen. Stats., and it is evident that the trial court assumed that the latter two counts of the information were based on this statute.

There was no evidence tending to support a charge under the provisions of Section 5143, Rev. Gen. Stats., 7244 Comp. Gen. Laws, 1927. In Townsend v. State, 63 Fla. 46, 57 So. R. 611, this Court construed Section 3308, Gen. Stats. of Fla., which afterwards became Section 5143, Rev. Gen. Stats. of Fla., and later Section 7244, Comp. Gen. Laws of Fla., and in referring to the third count of the information there under consideration the Court say:

"This third count seems to be based partly on Section 3308 of the General Statutes in that it charges the gold certificate to have been *entrusted* to the defendant by Martin Mayo, and partly on Section 3309 Id. in that it charges that she *secreted* the property entrusted to her. These two sections it seems to us are intended to embrace different kinds of bailees. The first embraces factors, commission merchants, warehouse keepers, wharfingers, wagoners, stage drivers or other common carrier on land or water, or *any other person with whom any property which may be the subject of larceny is entrusted or deposited by another.* The doctrine of *noscitur a sociis* or *ejusdem generis* applies to the last clause and must be understood as referring to bailees for hire, not embraced in the enu-

meration of such bailees first set forth. McGriff, Admr., v. Porter, 5 Fla. 373, text 378; Broom's Legal Maxims (8th Ed.) 452. The other section (3309) evidently refers to a different class of bailees not for hire.''

At the trial of the cause here under consideration the court charged the jury as follows:

"I charge you that the law of this State is that, if any factor, commission merchant, warehouse keeper, wharfinger, wagoner, stagedriver, or other common carrier on land or on water, or any other person with whom any property which may be the subject of larceny is entrusted or deposited by another, shall embezzle or fraudulently convert the same or any part thereof, or the proceeds or any part thereof, to his own use, or otherwise dispose of the same, or any part thereof, without the consent of the owner or bailor and to his injury, and without paying to him on demand the full value or market price thereof; or if, after a sale of any of the said property with the consent of the owner or bailor, such person shall fraudulently and without consent aforesaid convert or embezzle the proceeds, or any part thereof, to his own use and fail or refuse to pay the same over to the owner or bailor on demand; and if any person borrows or hires property aforesaid and embezzles or fraudulently converts it or its proceeds, or any part thereof, to his own use, he shall be punished as if he had been convicted of larceny.''

This charge was erroneous and we can not say was not prejudicial to the defendant because it was not applicable to the facts as disclosed by the evidence in the case at bar.

The court further charged the jury as follows:

"The law of this State provides that, if any person with whom any property which may be the subject of larceny is entrusted or deposited by another, shall embezzle or fraudulently convert the same or any part thereof, or the proceeds, or any part thereof, to his own use, or otherwise dispose of the same, or any part thereof, without the consent of the owner or bailor and to this injury, and without paying to him on demand the full value or market price thereof, or if, after a sale of any of said property with the consent of the owner or bailor, such person shall fraudulently and without consent aforesaid convert or embezzle the proceeds, or any part thereof, to his own use and fail or refuse to pay the same over to the owner or bailor on demand, and if any person borrows or hires property aforesaid and embezzles or fraudulently converts it or its proceeds, or any part thereof, to his own use, he shall be punished as if he had been convicted of larceny."

This charge was also erroneous under authority of the opinion in Townsend v. State, *supra*.

The court further charged the jury as follows:

"In this connection, I charge you that if in this case you find beyond a reasonable doubt that Anna Belle Crist did deliver to D. F. Dunkle, the defendant, two notes secured by mortgages described in the information, with the understanding and agreement on his, D. F. Dunkle's part, that said notes and mortgages were to be sold either by the said D. F. Dunkle or by the Palm Beach Guaranty Company, and the proceeds

thereof used in paying off certain notes and mortgages then outstanding, the obligations of Anna Belle Crist, and if you further find from the evidence, beyond a reasonable doubt, that either the Palm Beach Guaranty Company or the defendant, D. F. Dunkle, did sell the notes and mortgages so delivered to him or to the Palm Beach Guaranty Company and did receive the proceeds thereof, and without the consent of Anna Belle Crist did fraudulently apply said proceeds to any purpose other than the purpose which Anna Belle Crist directed that such proceeds should be applied, then you should find the defendant guilty. In other words, it is not necessary that the said D. F. Dunkle should convert the proceeds of said notes and mortgages to his own personal use, but if he applied said proceeds or knowingly permitted them to be applied for any purpose other than the purposes for which they were intended to be applied, to-wit: the payment of the debts of Anna Belle Crist, he would be guilty just as though he applied the money to his own personal use.''

This charge was also erroneous for the reasons above stated.

This latter charge was further erroneous because it was not based upon facts shown to exist by the evidence. There is no evidence that Mr. Dunkle at any time ever had the possession of the notes and mortgages, nor of the proceeds thereof. See Danford v. State, 53 Fla. 4, 43 So. R. 593; Dwyer v. State, 93 Fla. 777, 112 So. R. 62.

The court further charged the jury as follows:

''I charge you that an officer or director of a corporation is chargeable with knowledge of all matters

relating to the affairs of the corporation which he actually knows or which it is his duty to know. In this case, it is contended by the State that Anna Belle Crist dealt directly with the defendant, D. F. Dunkle, as an officer and agent of the Palm Beach Guaranty Company; that upon the delivery to him, or to the Palm Beach Guaranty Company of the notes and mortgages, signed by Anna Belle Crist, that she, through her agent, J. C. Crist, gave express and specific instructions as to how the proceeds derived from the sale of said notes and mortgages should be used by the said D. F. Dunkle, or the Palm Beach Guaranty Company, and if from the evidence you find this to be the truth of the case, I charge you that it was the duty of the defendant as an officer and agent of the Palm Beach Guaranty Company, and as an individual, to see to it that said instructions were followed, and if after the receipt of the proceeds of said notes and mortgages, if you find from the evidence that such proceeds were received, and defendant fraudulently permitted the proceeds of said notes and mortgages to be mingled with the funds of the Palm Beach Guaranty Company and by it used for any purpose other than the purpose or purposes for which said proceeds were directed to be used, that then it will be your duty to find the defendant guilty.''

This charge is in direct conflict with the law of embezzlement as enunciated in the case of Rast v. State, 79 Fla. 772, 84 So R. 683. In that case the Court in speaking of the crime of embezzlement under a different statute, but under which the same principles are involved that are involved in this case, say:

"To maintain a charge of embezzlement of State or county funds under Section 3317, General Statutes of Florida, it is necessary to prove that the money alleged to have been embezzled came into the possession of the accused, or under his control, and was converted by him to his own use or secreted or withheld by him with such intention."

And further, in the same opinion, the Court say:

"In a tax collector's office where such custom prevails, any clerk, deputy or employee of such officer who by reason of his employment receives into his possession in due course of the transactions of the office any money for State or county taxes and should convert the same to his own use, or secrete or withhold the same with intention to convert it to his own use, such employee, clerk or deputy would undoubtedly be amenable to punishment under the provisions of the said section of General Statutes. And the culpability of such clerk or deputy would not be transmitted to his employer or imparted to him in the absence of guilty knowledge on his part."

There were other erroneous charges apparently based upon the theory which prompted the giving of the charges above quoted. There were also charges refused which should have been given but it is not necessary to quote each of such charges to make clear the principle sought to be enunciated by this opinion which we think is sufficiently done by the comments on charges heretofore quoted.

There was not evidence in this case that the notes and mortgages ever came into the personal possession of the defendant. There was no evidence that the proceeds of the notes and mortgages ever came into his possession. The

evidence shows that the Crists applied to Mr. Dunkle as president of Palm Beach Guaranty Company to handle the notes and mortgages for them and to procure for them an advancement of money on such notes and mortgages. Mr. Dunkle referred the Crists to the vice-president of Palm Beach Guaranty Company, Mr. Hogarth. Mr. Hogarth agreed with the Crists to handle the transaction for them. Mr. Dunkle had nothing further to do with the transaction so far as the record shows until after the notes and mortgages had been assigned, the money received for them and checked out of the bank. After Mr. Hogarth had received the notes and mortgages Mr. Gross negotiated the notes and mortgages to one Thomas Watson, in which transaction Mr. Gross received for Palm Beach Guaranty Company $5500.00 in cash and gave Mr. Watson credit on his indebtedness to the company for a balance of the agreed price for the notes and mortgages. The evidence shows that Mr. Dunkle was not in the State of Florida at the time of this transaction and had no personal knowledge of the assignment of the notes and mortgages to Watson, nor of the receipt of the $5500.00 by the Palm Beach Guaranty Company. It is further shown that the sum of $5500.00 was placed to the credit of the company in a bank and was drawn out of the bank by the officers of the company before Mr. Dunkle had any knowledge that such money had been deposited in the bank. There is no evidence that Mr. Dunkle at any time attempted to conceal any matter or deceive the Crists or anyone else in regard to the transaction. There is no evidence that Mr. Dunkle was the agent of the Crists. There is evidence that the corporation of which he was president was the agent of the Crists for the purpose of handling the transaction here involved.

In 2 C. J. 413, embezzlement is defined as follows:

"To make out a case of embezzlement under the statutes it is necessary to show first that the thing converted or appropriated is of such a character as to be within the protection of the statute; second, that it belonged to the master or principal, or someone other than accused; third, that it was in the possession of the accused at the time of conversion so that no trespass was committed in taking it; fourth, that accused occupied the designated fiduciary relation, and that the property came into his possession and was held by him by virtue of his employment or office; fifth, that his dealing with the property constituted a conversion or appropriation of the same; and sixth, that there was a fraudulent intent to deprive the owner of his property."

See Foster v. State, 18 Dela. 111, 43 Am. 265; Commissioners v. Foster, 107 Mass. 221; Campbell v. State, 35 Ohio St. 70; Wagner v. State, 157 Ind. 577, 62 N. E. R. 38.

To sustain a conviction for the crime of embezzlement the evidence should show an intent on the part of the accused to defraud beyond a reasonable doubt. Such intent may be proved either by direct evidence or by circumstantial evidence. In this case, however, the evidence fails to show either by direct or by circumstantial evidence that Dunkle at any time had any intent to convert the Crists' property to his own use or to defraud the Crists of the property, or any part thereof. The evidence does not show that Dunkle had any knowledge concerning the transaction between Mr. Gross and Mr. Watson by which the notes and mortgages were assigned to Watson. The evidence does not show that Mr. Dunkle had any knowledge that any money, the proceeds of the notes and mortgages, had come into the hands, custody or control of Palm Beach

Guaranty Company and the evidence does not show that Mr. Dunkle converted or paid out any part of such money either for his own use or for the use of Palm Beach Guaranty Company. Therefore, we must hold that the evidence in this case is entirely insufficient to sustain the conviction.

For the reasons herein stated the judgment should be reversed and it is so ordered.

Reversed.

WHITFIELD, P. J., AND STRUM, J., concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.