## MANUEL CARLOS v. THE STATE OF FLORIDA

21 So. (2nd) 537            January Term, 1945
March 13, 1945                   Division B
Rehearing denied April 20, 1945 .

*G. P. Garrett* and *E. F. Householder,* for appellant.

*J. Tom Watson,* Attorney General, and *John. C. Wynn,* Assistant Attorney General, for appellee.

PER CURIAM:

Affirmed.

CHAPMAN, C. J., THOMAS, ADAMS and SEBRING, JJ., concur.

TERRELL, BROWN and BUFORD, JJ., dissent.

BROWN, J., dissenting:

On February 12, 1943, the State Attorney of the 9th Judicial Circuit filed an information in the Circuit Court for Seminole County charging that the appellant, Manuel Carlos, on December 30, 1942 did buy and receive two cases of cigarettes, the property of the St. Johns River Line Company, a corporation, which had theretofore been embezzled and that he did so well knowing that the same had been embezzled. He plead not guilty and upon his first trial, the jury could not agree and a mistrial was declared in August 1943. He was again tried in February, 1944, and a verdict of guilty was returned, motion for new trial was filed and denied and a sentence of two years in the penitentiary was imposed by the court. From this judgment and sentence this appeal was taken.

In December 1942, and for six years prior thereto, appellant operated a place of business known as "Manuel's Tavern" about six miles South of Sanford on the road from Sanford

to Orlando, where he operated a restaurant and sold meat, gasoline, wine, beer, tobaccos and cigarettes. He employed some girls to wait on the customers in the front while he acted as cook in the kitchen at the back. He usually kept on hand from sixty to seventy five cartons of cigarettes of various popular brands, including Camels and Lucky Strikes, which he usually purchased from the trucks of the Central Market and the Lewis Candy Company that came by to distribute them.

On the evening of December 30, 1942, one Felix Webb, a driver for the St. Johns River Line Company, a transportation company, operating between Sanford and Orlando and other points, drove up in a semi-trailer of that company to the company's freight depot and warehouse in Sanford. The trailer was then loaded by the company with a number of separate shipments which were checked into the trailer by bills or invoices and were later checked out of the trailer at Orlando by bills or invoices. The doors of the trailer were closed and sealed after the trailer had been loaded at Sanford. The manager of the company, Otto Caldwell, testified that when the trailer was loaded and the seal placed on the doors, the trailer and its contents were given into the possession of Felix Webb, who was solely responsible for the trailer and its contents from the time it left the warehouse until its destination was reached. The sealing up of the doors of the trailer was not done by Webb. His directions were to take the trailer, sealed as it was, to Orlando and to there deliver it to the company's warehouse. Webb had nothing to do with the interior or contents of the trailer other than that it was in his care. He was not, under his employment, authorized to enter the inside of the trailer. If the seal should become broken, that would not authorize him to enter the trailer, but it was his duty to close the doors if they came open. The trailer was not to be opened at any time until it arrived in Orlando, and when it got to Orlando it was to be opened by the warehouse man and not by the driver.

Webb, the driver, also testified that he did not have any right or authority to open the trailer or to take anything out. His story was that he had been drinking before he left San-

ford, and, after he left, somebody in a car told him that the rear doors of the trailer were open. He stopped and got out and hooked the doors, and then went down to the defendant's place where he drank a bottle of beer and then later another bottle. While he was at the defendant's place he sold the defendant two cases of cigarettes at $10.00 per case, went out, opened the doors of the trailer, crawled in and took out the cases of cigarettes and threw them over the fence at defendant's Tavern, and later drove on into Orlando and delivered the trailer to the company. The next day Webb went to the office of the company and told them that the doors of the trailer had come open and if the cigarettes were not there they had fallen out. Later he was jailed on a charge of stealing the cigarettes and changed his story.

About a week after Webb had been put in jail, the company's manager talked with him and Webb signed a confession stating that he had disposed of the cigarettes to Manuel Carlos. After his talk with Webb, Manager Caldwell signed an affidavit for a search warrant to be issued for the search of the defendant's place for the two cases of cigarettes, describing them as one case of Camel cigarettes which was marked "T. J. Hobbs, Orlando, Florida" and one case of Lucky Strike cigarettes on which was marked with white chalk the numeral "2". In his affidavit for the search warrant Caldwell referred to Webb's signed confession, and attached a copy thereto, and stated that "he has reason to believe that the said cigarettes or some part of them is now located in or on the premises now occupied by the said Manuel Carlos and that said Manuel Carlos at the time he bought the said cigarettes for $10.00 a case well knew the same was stolen property," etc. The county judge issued the search warrant, which was on its face in due and legal form.

The sheriff's return showed that the only property taken by him on said warrant was five unmarked cartons of Camel cigarettes.

There was considerable testimony, over defendant's objections, as to what transpired when the sheriff and one of his deputies and manager Caldwell went out to Manuel's Tavern and searched for the cases of cigarettes. The sheriff merely

presided over the search and did not make any search himself.. The deputy testified that he did not find the cases of cigarettes described in the search warrant, but that there were plenty of cartons of Lucky Strikes and Camels and other popular brands of cigarettes on display and stored in different parts of the place, and that the five cartons of Camels which they took were found in an out of the way place in the kitchen and they took them away as being probably. a part of the contents of the case of Camels alleged to have been sold by. Webb to Manuel Carlos.

Later, Caldwell got in touch indirectly with Carlos and subsequently had a conversation with him on the court house steps in Sanford in which he told Carlos that he, Caldwell, "was charged up with $122.58 on account of the loss of the two cases of cigarettes" and demanded that Carlos pay that sum to him. Manuel Carlos saw no reason why he should do so. He denied all along ever having bought the cigarettes from Webb. Later a friend advised him to settle with Caldwell, and a Sanford lawyer also advised him to do so, as that would be cheaper than to pay him, the lawyer, a fee for defending a prosecution against him. So a few days later Carlos paid Caldwell the $122.58 in the lawyer's office with the understanding that "the whole matter would be quashed." But soon thereafter the information, which is the basis of the conviction appealed from was filed.

At the trial Carlos testified that he had had no transaction with Felix Webb and testified that he had settled with Caldwell merely because he had been advised to do so rather than be prosecuted. He said that Caldwell talked to him like he was a gangster and that he, Carlos, had a sick wife and young baby, and was "between the devil and the deep blue sea;" that he regarded the whole matter as blackmail, but he could not afford to have any more trouble over it and so he acceded to Caldwell's demand and paid him the amount above named.

The first question involved, as stated by counsel for the appellant, is that inasmuch as the evidence showed that the driver of the truck was guilty of larceny and not embezzlement, could Manuel Carlos be legally convicted of receiving embezzled goods as charged in the information? Another

question is based on the proposition that inasmuch as the five cartons of cigarettes alleged to have been found as a result of the search were not shown to have been part of the contents of either of the two cases of cigarettes that were missing, the trial court should not have allowed the evidence of the search of Manuel's Tavern to be introduced and to remain in the record over the objection of the defendant. The fourth question is that there was no evidence, either circumstantial or otherwise, that the defendant knew that the two cases of cigarettes alleged to have been embezzled were in fact embezzled. The fifth question is that where the only evidence on which the conviction was based is the evidence of a self-confessed thief, plus a showing that in order to avoid trouble the defendant, as authorized by Section 812.01 F.S. on demand, paid the agent of the owner of the property the full market price thereof, was this sufficient evidence to sustain a conviction?

In a supplemental brief, counsel for appellant call attention to grounds numbered 12 and 14 of the grounds of appeal as set forth in the transcript. Ground 12 was that the trial court had erred in admitting in evidence over the objection of the defendant the search warrant above referred to; and ground 14 was that the verdict and judgment should be set aside because the trial court erred in allowing witnesses to testify over the objection of the defendant as to the proceedings had under the search made on the premises of the defendant.

The record shows that counsel for the defendant in the court below objected to the introduction of the affidavit and search warrant on the ground that the affidavit did not conform to the law in that it failed to set forth sufficient facts for the issuance of the warrant and specifically stated that the information given to affiant Caldwell was information based upon heresay—a statement made by another to him, and also upon the ground that the attached inventory as made by the sheriff failed to disclose the securing of the cigarettes described in the affidavit and warrant. In support of these contentions counsel cites Sections 933.04, 933.06 and 933.07 F.S. and also one of the forms promulgated by the criminal

procedure act as a form or affidavit for search warrants, which is set out in Section 923.11 F.S., which form includes the language that the affiant "has probable cause to believe and does believe" whereas the affidavit in this case uses the words "has reason to believe," and omits the words "has probable cause to believe and does believe."

Furthermore, in this connection, appellant contends that the affidavit for the search warrant alleged that the property was "stolen" property, whereas the information charged that Carlos had received "embezzled property," knowing that it was embezzled. Counsel for appellant contend that there was no evidence produced at the trial to show that Manuel Carlos knew that the property was either stolen or embezzled, but when the prosecutor elected to charge that Carlos knew the property was embezzled, he must prove the crime as laid; that proof that Manuel Carlos knew the property was stolen would not be the equivalent of proving that it had been embezzled; that buying and receiving *stolen* goods knowing them to have been stolen is one crime, and that buying and receiving *embezzled* goods, knowing them to have been embezzled, is another and distinct statutory crime.

We might observe here that there is no positive legal evidence in this record that the two cases of cigarettes described in the search warrant were ever missed by the St. Johns River Line Company. Caldwell testified that these two cases of cigarettes and other merchandise were loaded out of his freight depot into a truck which was placed in the charge of Felix Webb and that the load included these two cases. He made the broad statement that on December 30, the company lost a case of Camels and a case of Lucky Strikes, but on cross examination he admitted he was not present when the truck was unloaded in Orlando, and when asked how he knew the two cases were missing he said that he got a phone call the next morning checking on them, and that was his only knowledge at that time. In answer to a question by the court as to whether his only knowledge of the fact of loss was hearsay, he said his knowledge of this fact came from a phone call; whereupon the court instructed the jury to disregard the witness' statement about the cigarettes being missing at the

time of the arrival of the truck. This was the only evidence in the record that the company knew of any two cases of cigarettes being missing except the testimony of Webb, that, contrary to instructions, he had opened the doors of the truck at Manuel's Tavern and took out two cases of cigarettes and sold them to Manuel Carlos for $10.00 each. But the two cases of cigarettes described in the search warrant were admittedly not found in the defendant's place of business and the testimony of Felix Webb was not corroborated by any other witness, although the evidence indicates that on the evening of December 30, 1942, there were other people in and about the defendant's place of business.

The deputy sheriff and Caldwell found 18 cartons of Camels and 12 or 15 cartons of Lucky Strikes in defendant's tavern. There was no evidence whatever to show that the five cartons of Camel cigarettes were a part of either of the two cases of cigarettes described in the search warrant. Therefore the defendant's motion to strike the testimony of Caldwell and the deputy sheriff as to finding these five cartons should have been granted without restrictions. The court granted the motion to strike with restrictions by granting it only "insofar as the evidence goes outside of or is in addition to the cigarettes mentioned in the return," which return did show the finding of five cartons of Camel cigarettes, but the search warrant authorized only the search for seizure of two specifically described cases of cigarettes. Indeed, in view of the language of the affidavit and search warrant, it is quite possible that the defendant's further motion to strike all of the rather extensive testimony as to what transpired in making the search in the defendant's tavern should have been granted, but the question is not free from difficulty and we do not deem it necessary to rule upon it, as we think this case can be disposed of on another ground.

The ownership of the property, was, by the information properly laid in the St. Johns River Line Company, a corporation, which the evidence shows was a common carrier, and hence a bailee for hire of the property, although the goods transported really belonged to the shippers or consignees. Grant v. State, 35 Fla. 581, 17 So. 225; 18 Am. Jur., 600.

The information was manifestly based upon Section 812.11, F. S. 1941, which reads: "Whoever buys, receives or aids in the concealment of embezzled property, knowing the same to have been embezzled, shall be punished" as provided in the statute. So the burden rested upon the state to prove that the two cases of cigarettes described in the indictment was property which had been embezzled, and that the defendant received it knowing that it had been embezzled. The receiving of stolen property is made a crime under another and different statute.

Taking the state's own evidence as true and at its full value, our conclusion is that it shows that these two cases of cigarettes had been stolen and not embezzled. It is true that an officer, agent or servant of a corporation who has been entrusted with or who had the care, custody or control of personal property, by virtue of his employment, may be guilty of embezzlement. See Sections 812.01, 812.04, F.S. 1941. But here, on the State's evidence, Webb, the servant of the St. Johns River Line, was employed to drive the truck and trailer from Sanford to Orlando and there deliver the truck and trailer intact to the company's Orlando warehouse. He had no authority whatever to open the doors of the attached trailer, crawl in and take out any of the merchandise therein contained. When he did so, in violation of instructions, and converted the property to his own use, he committed a trespass against the possession of the St. John's River Line, and was guilty of larceny, pure and simple. Up to the moment of this trespass conversion, the legal possession and custody of this merchandise was in the St. John's River Line, which had never transferred or entrusted its possession, custody or control of the contents of the sealed trailer to the driver of the truck, who, as to such contents, was at most a bare custodian. The essence of larceny is a criminal trespass upon the right of possession. Fitch v. State, 135 Fla. 361, 185 So. 435; 32 Am. Jur. 882; Hatcher v. State, 74 Fla. 112, 76 So. 694. One who, by virtue of a fiduciary relationship, is entrusted with the custody and possession of personal property, commits no actual trespass when he converts the property to his own use, he being in the rightful possession thereof, and

is therefore guilty, not of larceny, but of embezzlement. There may be, and probably are, cases where, on the facts, the accused is guilty of both larceny and embezzlement, and may be prosecuted for either offense, as pointed out in the Fitch case, but here, as in the cited case, the State's evidence made out a case of larceny, not embezzlement.

In the Fitch case, supra, the accused was the janitor and night watchman of a bar or liquor store. During the night, he opened the cash drawer in the store and took out $97.00 which his employer, the owner, had left there. We held that the possession of the contents of the cash drawer was still in the owner, and the taking of it from the cash drawer was a criminal trespass upon the owner's possession, which the bare custodian, the janitor and watchman of the premises, had no right to commit, and that the offense committed was therefore larceny rather than embezzlement, which latter crime involves a violation of relations of a fiduciary character.

As far back as Tipton v. State, 53 Fla. 69, 43 So. 684, we held that the gist of embezzlement is a breach of trust; an appropriation of property by one who held possession thereof by virtue of such relation. The court held in the Tipton case that the accused was not guilty of embezzlement because no trust relationship between the owner of the property and the accused was proven, and the judgment of conviction was reversed. This is in line with the weight of authority. See L8 Am. Jur. 601; Weber v. State, 208 N. W. 923, 45 A.L.R. 928, and 32 Am. Jur. 958-960.

In McKinley v. State, 102 Fla. 632, 136 So. 380, it was held that, to make out a case of embezzlement, it must be shown that the accused occupied a designated fiduciary relation, by virtue of which he was in *possession* of the property, so that at the time of the conversion no *trespass* was committed in taking it; citing Dunkle v. State, 98 Fla. 985, 124 So. 725. The judgment of conviction of embezzlement was reversed, though the court stated that if the defendant had been indicted for grand larceny, the court would not have been disposed to disturb the verdict. The cited Dunkle case, the

opinion in which was written by Mr. Justice BUFORD, fully sustains the holding in the McKinley case.

In Fitch v. State, supra, we reviewed the authorities, including our own cases, and drew a distinction between the real custody and possession of personal property by an agent or employee and the *bare* custody of an employee who has no right or authority to take manual or actual possession of the money or property for any purpose, even though, by reason of his employment, he has easy access to such money or property. Near the end of the opinion in that case the following paragraph appears:

"There is no evidence in this case which indicates that the owner of this money voluntarily parted with the possession or the title thereto. The money was in the cash drawer in the owner's store, where he had left it, and hence was still in his possession, and the felonious taking of it was a crime against his possession, which the custodian of the premises had no right to commit. If there was a trespass in the taking, it would be larceny rather than embezzlement, which latter crime generally involves a violation of relations of a fiduciary character. 9 R.C.L. 1264."

And so here, the truck and trailer were the property of the St. John's River Line Company, and the trailer containing the merchandise was sealed by the Company at Sanford. Webb's only duty was to drive the truck and trailer intact to the Company's warehouse in Orlando. The Company's possession of the contents of the trailer was never transferred or surrendered. Webb, at most was a bare custodian. So, when he opened the doors of the trailer and took out two cases of cigarettes, with the intent to convert them to his own use, as was shown by the State's evidence, he committed a trespass upon the possession of his employer, and was guilty of larceny and not embezzlement. It follows that there was a fatal variance between the pleading and the proof. If this appellant bought these cigarettes from Webb, as the State claimed, he bought and received *stolen* goods, and not "embezzled goods" as charged in the information.

TERRELL and BUFORD, JJ., concur.