### IRA FITCH v. STATE.

185 So. 435.
Opinion Filed December 28, 1938.

362

*Robert J. Davis,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

BROWN, J.—The plaintiff in error, Ira Fitch, was convicted of grand larceny, that is, the felonious taking and carrying away of $197.00 in United States currency, the property of C. W. Gilbert. The accused was a janitor and night watchman in Gilbert's bar, known as "The Palace Bar," in Fort Lauderdale. It is contended, first, that the evidence was not sufficient to show the defendant's guilt of any offense; and, secondly, that if it showed any offense whatever, it was the offense of embezzlement rather than larceny.

The Palace Bar, of which Gilbert was the proprietor, was found by police officers early one morning to have been robbed the night before. Money to the amount of $197.00, which Gilbert had checked over the night before with the defendant and in defendant's presence and left in the money drawer of a cash register, had been taken. Slot machines were lying on the floor, but unopened. Defendant Fitch was found by the police in a storage room, part of which was used as an ice chest, the door of which had been latched from the outside. He claimed that he had been locked in there by the person or persons (he first said there were two men) who had robbed the cash drawer. He later said that "Micky" Wolf had taken the money and locked him up, and had threatened to come back and kill Fitch if he ever told on him. Gilbert said that when he arrived on the scene,

Fitch said: "Get Micky Wolf and we will talk." Wolf, who has a bad criminal record, was located in New York and arrested. Wolf testified on the trial of the case against defendant Fitch that Fitch had initiated and committed the larceny and had gotten Wolf who had been living for a time in Fitch's home, and who arrived at the store after Fitch had taken the money and thrown down the slot machines to help him by locking him up, and agreed to pay Wolf $46.00 which he owed him out of the money taken, and that after Fitch had taken the money he gave Wolf the $46.00 and Wolf locked Fitch in the storage room at Fitch's request, in accordance with their agreement. Defendant Fitch denied this, and testified that Wolf had secured admittance into the barroom by a ruse and had locked defendant in the storage room, and that Wolf was the one who took the money; that if he, Fitch, had ever intended to rob the cash drawer he would not have selected a night when there was only $197.00 in it, because Gilbert frequently left from $700.00 to $1200.00 in there over night, when the money in the slot machines was included. Wolf testified that he had pleaded guilty to aiding and abetting Fitch in the commission of the larceny and had been sentenced to two years in the penitentiary, but that Fitch was the principal actor and was the one who took the money. No money was found by the officers in Fitch's possession. In spite of Wolf's bad record as a burglar, which he freely admitted the jury saw fit to believe him, and found Fitch guilty as charged. The trial judge denied motion for new trial. The jury had the witnesses before them and saw their demeanor on the stand. When there is a conflict in the testimony, the jury who are the judges of the credibility of witnesses, must solve the problem, and where a case turns upon that question an appellate court is rarely, if ever, authorized to disturb the jury's finding. We do not think we should do so in this case,

which we have briefly outlined above, omitting some details, such as the evidence of defendant's intimacy with Wolf, which may have influenced the jury to find as they did.

Nor can we accede to the contention that the state's evidence in this case, even if believed, would only authorize and support a prosecution for embezzlement. As we understand this evidence, it tends strongly to show that the defendant, in his capacity as janitor and night watchman, merely had custody of the property in the store, including the money which was taken. He had no duties to perform with reference to said money other than those of a bare custodian. The general rule in most jurisdictions is that one who merely has the *bare custody* of money or personal property, the *legal possession* remaining in the owner, may be guilty of larceny, if he had a felonious intent either at the time he acquired such custody, or afterwards, if, with such felonious intent, he takes it and converts it to his own use, regardless of the fact that the custody may have been lawfully acquired; that in such case he need not have had the felonious intent when he acquired the custody. See 37 C. J. 776; Holebrook v. State, 107 Ala. 154, 18 So. 109, and authorities cited. Manifestly, if the owner in this case had known that this defendant was going to steal the property or convert it to his own use, he certainly would not have left him in custody of the premises and given him the key to the place. Indeed, it does not appear that Fitch had any right to take the money out of the cash drawer for any purpose, except perhaps to do so if necessary to preserve it for Gilbert, the owner. The evidence shows that the money was left in the cash drawer as had been Gilbert's custom, for the bar tender's use the following day in making change.

Larceny at common law may be defined as the felonious taking and carrying away of the personal property of another, which the trespasser knows to belong to another,

without the owner's consent, and with the intent permanently to deprive the owner of this property therein, and convert it to the use of the taker or of some person other than the owner. See Driggers v. State, 96 Fla. 232, 118 So. 20; 36 C. J. 734; 17 R. C. L. 4. Our statute does not attempt to define it. See 7223 C. G. L. The asportation may be completed by even the slightest removal of the thing stolen from its original position. Driggers v. State, *supra.*

The general rule is that one who is in lawful possession of the goods or the money of another cannot commit larceny by feloniously converting them to his own use for the reason that larceny, being a criminal trespass upon the right of possession, cannot be committed by one who, being invested with that right, is consequently incapable of trespassing upon it. 36 C. J. 774. However, as has frequently been held in this State, a person in the possession of the goods of another may nevertheless become guilty of larceny at common law by converting them to his own use, if the felonious intent so to convert them existed at the time he acquired the possession, for the felonious intent made his acquirement of the possession unlawful and the subsequent conversion is consequently a trespass upon the rights of the owner. As our own decisions usually express it, one who obtains possession of personal property by a trick, device or fraud with intent to appropriate the property to his own use, the owner or custodian intending to part with possession only, commits larceny when he subsequently appropriates it. Finlayson v. State, 46 Fla. 81, 35 So. 203, Wilson v. State, 47 Fla. 118, 36 So. 580; Synes v. State, 78 Fla. 167, 82 So. 778.

In Finlayson v. State, *supra,* it was held that a bailee, who has lawful possession, cannot submit larceny, provided his possession was lawfully obtained and without any intent to appropriate the property to his own use. In that case,,

the plaintiff was convicted of the crime of larceny, and the judgment was affirmed. In that case this court said:

"There was evidence tending to show that the accused fraudulently induced two negroes to deposit their money with him for safe keeping over night, intending from the beginning to appropriate it to his own use. It can not be said, therefore, that the owners 'consented' to part with the possession of their money; there was no *conventio mentium,* the one party intending only to part with the bare possession, the other intending to acquire the property in the thing itself; the consent was not as broad as the taking. The fraud vitiated whatever right might otherwise have been acquired by virtue of the apparent voluntary parting with the possession of those rightfully entitled thereto. Such act was at the common law larceny, and no statute was needed to make it a crime; nor does it come within our embezzlement act. The prime object of this statute is to make criminal certain acts that do not come within the common law definition of larceny, not those acts that were theretofore punishable as such. Taking this view of the object of the statute, we will not hold an act theretofore larcenous to be embraced within its provisions, in the absence of clear words to that effect. Such is not the case before us. The authorities sustaining the charge are abundant." (citing authorities.)

It will be observed that the opinion in that case says that this court will not hold an act which constituted larceny at common law to be embraced within the provisions of the embezzlement statute in the absence of clear words to that effect.

In the case of Jarvis v. State, 73 Fla. 652, 74 So. 796, it was held that one who obtains the possession of property by trick, device or fraud, with the intent to appropriate the same to his own use, the owner intending to part with the

possession only, commits larceny when he subsequently appropriates it; that "the consent of the owner in surrendering possession of the property must be as broad as the taking." To like effect see Murray v. State, 93 Fla. 706, 112 So. 575.

But there is a strong line of authorities in support of the proposition that at common law one who was merely the custody of a chattel, as distinguished from its possession, is guilty of larceny if, with felonious intent, he converts it to his own use, regardless of the fact whether the custody was acquired lawfully or unlawfully, or whether the intent to convert was formed at the time the custody was acquired or afterwards. See 36 C. J. 776, citing in the notes among other cases the case of Washington v. State, 106 Ala. 58, 17 So. 546, and Holbrook v. State, 107 Ala., 154, 18 So. 109, 54 A. S. R. 65.

In Bishop on Criminal Law, 9th ed. Vol. 2, p. 629, in treating the subject of larceny, the author says:

"Section 824. 1. Possession and Custody—are widely distinguishable. There can be no trespass against the custody; it is always against the possession, and it can be committed as well by the custodian as by any other person.

2. Servant.—When a master's goods come within the handling of the servant, the latter has in law no more than a custody of them, the possession remaining in the former. Therefore a clerk may commit larceny of them; by feloniously removing them. But a mere intent to steal does not constitute larceny in the servant, who becomes guilty only when, with the felonious intent, he does something with the goods contrary to his duty.

3. Custodian generally,—Where any person, whether servant or not, has the bare charge or care of another's effects, 'the legal possession,' observes East, 'remains in the owner; and the party may be guilty of trespass and larceny

in fraudulently converting the same to his own use.' A person to whom property is delivered for the owner becomes such a custodian and may commit larceny by converting the property to his own use."

On page 635, vol. 2, section 836, in the same work, it is said:

"Section 836.   1.   Act violative of duty.—If a servant, with the intent to appropriate to himself an article in his custody belonging to the master, does with it anything forbidden by his duty, he commits larceny thereof.

"2.   Absconding with Master's Cart.—'A carter going away with his master's cart was holden a felony.'   For, being impelled while on the line of duty by his master's mind rather than his own, he commits a trespass when he wilfully departs out of that line.

"3.   Clerk.—Exactly the same thing occurs where a clerk takes money out of his employer's till and puts it into his own pocket, or contrary to his duty removes goods of his employer.   These acts are trespasses, and when committed with the intent to steal, are larceny.   So it is larceny for the confidential clerk of a merchant to take a bill of exchange unindorsed from the bill box, and convert it to his own use, although he was in the habit of attending to the cash affairs from week to week; for as it had not been delivered to him by his employer for this use, the taking is tortious, from the employer's possession.

"4.   Servant's Theft by Selling.—Where a servant is directed to convey goods from his master to a customer, but sells them instead for his own lucre, he does with them what duty forbids, commits a trespass, and, his intent being felonious, a larceny."

Later on at page 650, the same author observes:

"In later times, both in England and our country, not

only have embezzlement statutes given a wider protection to property against peculations by servants than the common law afforded but provisions have been added against what are properly called larcenies by servants differing more or less, or not at all, from larcenies, at common law."

On page 279 of Vol. 2 of the same work, Mr. Bishop says:

"Section 328., Whether the Same Act may be both Embezzlement and Larceny.—According to a doctrine brought to view in our first volume, if embezzlement is a misdemeanor while larceny is a felony, the same evil act cannot be both. But where both crimes are of the same grade, an act sufficiently covered by the terms of the statute, such as larceny by a bailee, is embezzlement, while if it was larceny before the enactment of the statute, it remains such, and may be indicted as the one or the other. In fact, most of the statutes make embezzlement a felony, the same as larceny. Still it is sometimes assumed that the two offenses do not run into each other, but that where the one ends the other begins. Chitty seems to look upon the statute as not applying to cases which were larceny at the common law. On the other hand, the English commissioners, while proposing a rule the reverse of that which Chitty seems to accept, observe, that it 'is perhaps in strictness unnecessary,' being 'founded on the well-known principle that no one shall take advantage of his own wrong.' This is the sound view of the common law, and has been declared by various courts."

"329. In Reason.—This is plainly so. If, for example, the taking of the embezzled article was such as amounts to a common law larceny, why should not an embezzlement indictment be maintainable at the election of the prosecuting power, provided the act was within the terms of the statute, and no previous prosecution had been had for it as a larceny?

This question, of course, assumes that there is no technical objection, such as occurs where embezzlement is only a misdemeanor while larceny is a felony."

And in Vol. 1, at page 560 under the title of "Merger," Mr. Bishop has this to say:

"Section 786. Something like Merger—occurs where a criminal act is within the definitions of two or more separate offences, or where it may stand anywhere among graded offences included within one another, as explained in the last chapter. In such a case the prosecuting power may select any one of the offences, and the defendant cannot object though his guilt embraces also a larger or different one.

"The Merger of this Chapter—creates a partial exception to that doctrine.

"Section 787. 1. Defintion.—Where the same act is within the definition of a misdemeanor and of a felony, or of a felony and of treason; the lower grade of offence merges in the higher, so that the act can be punished only as a felony in the one instance or as treason in the other.

"2. Reason for Rule.—There is at the common law a wide distinction between a felony and a misdemeanor. It affects alike the punishment, the procedure, and several rules governing the crime itself. Out of this distinction grows the doctrine that the same precise act, viewed with reference to the same consequences, cannot be both a felony and a misdemeanor,—a doctrine which applies only where the identical act constitutes both offences."

As our statutes on embezzlement provide that the punishment shall be the same as if the accused had been convicted of larceny it would appear that where the same act or transaction constitutes both larceny and embezzlement, the prose-

cuting officer may elect as to which of the two crimes the accused shall be prosecuted for.

Section 7247 C. G. L. provides that if any officer, agent, clerk, servant, or member of any incorporated company, or if any clerk, agent or servant of any person, embezzles or fraudulently disposes of or converts to his own use anything of value which has been entrusted to him, or has come into his possession, care, custody or control by reason of his office or employment, shall be punished as if he had been convicted of larceny.

And Section 7244 C. G. L. extends the crime of embezzlement to common carriers bailees, etc., "or any other person with whom any property which may be the subject of larceny is entrusted or deposited by another." ·

The title of this section and its content indicate that it was the intention of the statute to extend the embezzlement statute to cover bailees.

As far back as Tipton v. State, 53 Fla. 69, this court said that "the gist of the offence of embezzlement is a breach of trust." In one of our neighboring states the crime of embezzlement is denominated "larceny after trust." This thought, that embezzlement fundamentally constitutes a breach of trust of some sort, within the relationships designated in the statutes, has been repeated in subsequent decisions. See Skipper v. State, 114 Fla. 312, 153 So. 853. In the case of Neal v. State, 55 Fla. 140, 46 So. 845, which was decided by a divided court, Justices TAYLOR *and* PARKHILL vigorously dissenting, this court held that:

"Evidence that a laundress, upon discovering in a clothes' basket committed to her, a bag of money belonging to her employer accidentally placed therein, recognized her duty to return the bag to its owner, but subsequently and before so returning it fraudulently converted the money, will support a conviction of embezzlement under General Statutes,

3311, condemning the act by a servant as to anything of value which has come into his possession, care, custody or control by reason of his employment. The dissenting Justices thought the facts showed larceny and not embezzlement.

And in Dunkle v. State, 98 Fla. 985, 124 So. 725, the third headnote reads as follows:

"3. To make out a case of embezzlement under the statutes it is necessary to show first, that the thing converted or appropriated is of such a character as to be within the protection of the statute; second, that it belonged to the master or principal, or someone other than accused; third that it was in the possession of the accused at the time of the conversion so that no trespass was committed in taking it; fourth, that accused occupied the designated fiduciary relation, and that the property came into his possession and was held by him by virtue of his employment or office; fifth, that his dealing with the property constituted a conversion or appropriation of the same; and sixth, that there was a fraudulent intent to deprive the owner of his property."

In this general connection see also Grover v. State, 82 Fla. 727, 90 So. 473, 26 A. L. R. 373; Bussart v. State, 128 Fla. 891, 176 So. 32; Rosenbloom v. State, (Ala.) 98 So. 216. And in Murray v. State, *supra,* it was said by this Court that: "The chief distinction between larceny and embezzlement lies in the character of the acquirement of possession of the property."

It would appear from the above review of authorities that if the same set of facts which we have before us in this case, if believed by the jury, were sufficient to constitute both larceny at common law and embezzlement under our statutes, (which latter offence is by the way a statutory offence unknown to the common law), the plaintiff in error here could have been prosecuted for either offence, though

we are inclined to think that under the facts of this case the jury would have been authorized to find, as they evidently did, that the defendant was a bare servant or custodian and that there was a trespass in the taking and hence the offence was really larceny.

There is no evidence in this case which indicates that the owner of this money voluntarily parted with the possession or the title thereto. The money was in the cash drawer in the owner's store, where he had left it, and hence was still in his possession, and the felonious taking of it was a crime against his possession, which the custodian of the premises had no right to commit. If there was a trespass in the taking, it would be larceny rather than embezzlement, which latter crime generally involves a violation of relations of a fiduciary character. 9 R. C. L. 1264.

Our conclusion is that there is evidence in this case sufficient to sustain the verdict upon the charge of larceny, and that such charge is more appropriate to the facts of the case than would have been a charge of embezzlement.

For the reasons above pointed out, the judgment is hereby affirmed.

Affirmed.

WHITFIELD, BUFORD and CHAPMAN, J. J., concur.