## ROYCE WETHINGTON v. STATE OF FLORIDA

32 So. (2nd) 458  
November 18, 1947

June Term, 1947  
En Banc

*Clark W. Jenkins,* for appellant.

*J. Tom Watson,* Attorney General, *Reeves Bowen,* Assistant Attorney General, and *Rebecca Bowles Marks,* Special Assistant Attorney General, for appellee.

CHAPMAN, J.:

Charles Buchan, Herman Buchan and Royce Wethington were informed against and convicted in the Criminal Court of Record of Orange County, Florida, for the crimes of grand larceny and breaking and entering with the intent to commit grand larceny. From a judgment and sentence to five years in the State Penitentiary imposed against Royce Wethington an appeal has been perfected here and several grounds urged for a reversal.

It is contended that language employed by the County Solicitor during the progress of the trial was prejudicial to the appellant. It is, in part, viz:

"MR. ELLARS: I object. Mr. Jennings has interfered with the State's running of the case. He has done nothing but interfere. Yesterday he prevented Mr. Hall's clients from pleading guilty, and he has just continually interfered, and—

"MR. JENNINGS: I object to that your Honor, making that statement before the jury. I certainly do. I move this Court that it declare a mistrial for that statement made by the Prosecutor in the presence of the jury.

"MR. HALL: I join in the objection.

"JUDGE: Gentlemen of the Jury, you will not regard as evidence in this case or pay any attention to the remarks of counsel before the Court; that is not evidence. The motion is denied, and exception noted."

When the appellant was testifying in his own behalf and being interrogated by his counsel the following occurred. Mr. Jennings: "Q. Have you been convicted of another offense during your entire life? A. No, sir. I have never been in a court room since that." Mr. Ellars (County Solicitor): [to counsel for appellant] "Q. Have you seen Wethington's FBI record?" Mr. Jennings: "Your Honor, the remark just made

by the prosecution was entirely uncalled for and a violation of all the rules of evidence."

Mr. Cokes gave testimony as to the general reputation of the defendant, when the following occurred: Mr. Jennings: "Q. Do you know Mr. Wethington's reputation in the community in which he lives for integrity and diligence and scholarship? A. Only on my associations with him there in the school. They were good." CROSS EXAMINATION. BY MR. ELLARS: "Q. You don't know his reputation then? A. Only in school. Q. You know what he did in school, but you don't know what his reputation is? A. His general reputation? Q. What people say about you in the community in which you live? You don't know his general reputation do you then? A. No, sir. Q. You didn't know he had served eighteen months in the Federal Penitentiary? A. No, sir."

The evidence discloses that O. B. White operated a business in Orlando, Florida, on October 31, 1946, and in this building was a safe containing $614.00, consisting of paper money, silver dollars, a cigar box of pennies, and several rolls of nickels and pennies; valuable papers, three watches and three pistols. The building was entered on the night of October 31, 1946, the safe placed in a truck, which was driven out near Lake Fairview, about six miles from Orlando, and the safe opened and contents taken, but the safe was left where it was opened. A Mr. Parrish, living nearby, heard the truck, observed that it was stuck, and went from his house to the truck to help them out of the mud. He found three men about the truck but failed to identify the appellant as one of the three. The truck was near the Parrish home from 12:00 o'clock until 12.30.

The appellant was seen in the truck with Charles Buchan by patrolmen about 10:30 or 11:00 on the way from the Legion Home to get some whiskey and the truck was later seen on West Church Street near the Sheldon Hotel around 11:15. The appellant was arrested by the officers in the lobby of the Sheldon Hotel the next day and the arresting officers took from his person a hundred dollar bill, silver dollars, a roll of nickels and ten and twenty dollar bills totaling $162.85. The officers testified that the appellant at the time of his

arrest told them he got the money in a poker game. The appellant when on the stand as a witness testified that Charles Buchan paid him $120.00 on November 1st as part payment on an account or debt due by Charles Buchan to the appellant. Charles Buchan was on trial with appellant under the same information and the State had previously offered in evidence a written confession to the crime as made by Charles Buchan. Charles Buchan did not deny or contradict the statement of the appellant about paying him $120.00 on the morning of November 1st, 1946.

The question here presented is the sufficiency of the evidence as adduced by the State to sustain the material allegations of counts one and two of the information. Section 811.01, Fla. Stats. 1941 (FSA), makes the taking of personal property of the value of fifty dollars or more grand larceny. Larceny may be defined as the felonious taking and carrying away of personal property of another, without the owner's consent and with the intent to permanently deprive the owner of his property and convert it to the taker's use. Fitch v. State, 135 Fla. 361, 185 So. 435. Section 810.02, F.S.A., provides that whoever breaks and enters any other building or ship or vessel with intent to commit a felony, or after having entered with such intent breaks such other building, ship or vessel shall be punished by imprisonment in the state prison not exceeding fifteen years. The State of Florida under the law had the burden of proving that the appellant broke and entered the building described in the information.

The prosecution in the lower court failed to adduce testimony to the effect that the appellant broke and entered the building described in the information. It is true that the State's witness, Mr. Parrish, saw three young men shortly after the hour of the alleged burglary about the truck where the safe was found near Lake Fairview about six miles from Orlando, on the following morning, November 1, 1946, but his testimony failed to identify the appellant as one of the three. If the witness had identified the appellant as one of the three whom he saw about the truck, then there would have been evidence as to the breaking and entering, a material allegation by law cast in the prosecution. We do not overlook the

fact that the appellant and Charles Buchan were seen in the Navy truck by officers between the Legion Home and the Sheldon hotel shortly after 11:00 o'clock, a few minutes prior to the burglary.

The evidence relied upon by the State to sustain the allegations of breaking and entering the building and the larceny of the described personal property by the appellant was that the officers arresting him (appellant) on the following day found on his person a hundred dollar bill with other paper and silver money and Mr. White gave testimony of having placed similarly described money in his safe on the evening of October 31, 1946. Where a party is found in the possession of goods recently stolen and directly gives a reasonable and credible account of how he came into such possession or such an account as will raise a reasonable doubt in the minds of the jury, then it becomes the duty of the State to prove that such account is false or otherwise there should be an acquittal. McDonald v. State, 56 Fla. 74, 74 So. 485. Unexplained possession of recently stolen property may be sufficient to sustain conviction of the possessor for the crime of larceny. Kemp v. State, 146 Fla. 101, 200 So. 368; Carnley v. State, 143 Fla. 756, 197 So. 441.

Mr. Parrish, the State's witness, placed the time of opening of the safe at between 12:00 and 12:30 on the 31st of October, 1946, and talked with the three young men and assisted them in getting the Navy truck out of the mud. He failed to identify the appellant as one of the three young men about the truck. The witness Roscoe C. Winslow testified that the appellant came to the Dutch Mill a little before 12:00 o'clock and the witness was with him continuously until about 1:00 o'clock, when he left for home in a cab driven by Lonnie Newham. Winslow called Mr. Howell for a cab to be sent to the Dutch Mill for the appellant at his request. The call was registered by Mr. Howell and the first available cab was by him sent to the Dutch Mill, but Lonnie Newham while cruising picked up the appellant and took him home, which was unknown to Howell.

The witness Browning reached the Dutch Mill between 12:20 and 12:30 on the night of October 31, 1946, and testified

to seeing the appellant and Roscoe Winslow. The testimony of three witnesses is not discredited in the least. The State heard the appellant's explanation about receiving a part of the stolen property through Charles Buchan but made no effort to contradict it although Charles Buchan at the time was in the court room and a defendant in the same trial. It is our conclusion that the evidence adduced by the State during the progress of the trial is legally insufficient to sustain the verdict and judgment entered below against Royce Wethington. Reversed and a new trial awarded.

BUFORD, SEBRING and BARNS, JJ., concur.

THOMAS, C. J., agrees to conclusion.

TERRELL and ADAMS, JJ., dissent.