THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
FELIPE MERCED LANDRAU, Defendant and Appellant.

No. 15616.  Argued April 1, 1954.—Decided May 9, 1955.

*E. L. Belén Trujillo* for appellant.  *José Trías Monge, Attorney
General* and *Rafael L. Ydrach Yordán, Assistant Fiscal of
the Supreme Court,* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The prosecuting attorney of the Superior Court of Puerto

Rico, Bayamón Part, filed an information for grand larceny against defendant Felipe Merced Landráu because "he stole from the property of Julio López Abril five pigs, one black, one black and white, one red with white spots, and the other two of different colors, *which had been entrusted to defendant's care.*"

The prejudiced party, Mr. López Abril, testified that he had left the pigs with defendant "to take care of them for me until Christmas Eve" (Tr. 8 and 9), "and that I would pay him something when I went for them" (Tr. 9); "when I went for my pigs I saw this man (pointing to defendant) in the condemned slaughterhouse of Guaynabo (Tr. 10); then I saw smoke coming out from the slaughterhouse (Tr. 10); I went to the Police Station and there I informed the police that I had left those pigs under the care of that man . . . that the pigs were mine and that they were killing pigs in the condemned slaughterhouse . . . we went to the slaughterhouse and there I identified three of my pigs (Tr. 10); there were three and the others had already been killed (Tr. 10); I told the Justice of the Peace of Guaynabo about those three pigs from whom I had bought them and I identified them, then the Justice of the Peace of Guaynabo told us . . . to leave those three pigs under the custody of the court; he told us that those pigs were under the rules of the court . . . then the judge appointed a man named Francisco as guardian of the pigs . . . then I came back to Bayamón and the next day when I went to see my pigs I learned that this man (pointing to defendant) had taken the three pigs from the person who was taking care of them by order of the Justice of the Peace of Guaynabo, had killed them and sold them for meat" (Tr. 11); "I received nothing, not a cent from him" (Tr. 12); when he is asked how long defendant was taking care of those pigs, he answers: "about a month" (Tr. 14). Accord-

ing to the testimony of José Rosa Reyes, witness of the prosecuting attorney, the accused represented the prejudiced party in other meat businesses (Tr. 21); that the accused paid for the meat in the name of the prejudiced party: "I was buying and selling pigs and cattle which belonged to Mr. López Abril, and the one who gave me the meat and with whom I dealt was this man (the defendant); that. I paid him, and this man (the defendant) in turn paid Julio López Abril (Tr. 21)."

■ Defendant-appellant is right in the sense that the evidence introduced is insufficient to maintain a charge of grand larceny. Section 426 of the Penal Code of Puerto Rico defines the crime of larceny as "the felonious stealing, taking, carrying, leading, or driving away the personal property of another." A person can not very well allege that another has stolen his property, when the former voluntarily delivers the property to the latter, giving him. possession of it for certain commercial or civil purposes.

The difference between larceny and embezzlement lies in the way the offender obtains the property, object of the unlawful appropriation to his own use. When he comes lawfully into the possession of the property, the unlawful appropriation by him is embezzlement. When the accused has only the custody of the property and by means of that custody illegally acquires its possession, the felonious appropriation of the same constitutes the crime of larceny.

■■ It is a well-settled rule in jurisprudence that the crime of larceny must be performed while the thing is in possession of the owner, within his business premises or his residence, or in transit from one place to another on instructions of the owner for the purpose of delivering the same to another person; thus, the store clerk or the bookkeeper, or the bank teller of the goods and securities of a mercantile firm or bank; the servant as to the furniture and possessions.

of a residence; the hostler as to the horses in a stable; the shepherd as to the sheep within the farm of the owner; the errand boy as to the goods he has been sent to deliver to another person; the watchman as to the merchandise he has been ordered to guard inside the storehouses. In all these cases the store clerk, the bookkeeper, the teller, the servant, the hostler, the shepherd, the errand boy, and the watchman *have the custody*, and to a certain point, the possession, but it is a figurative possession in representation of the owner, a possession that is inherent in his ordinary employment and which is recognized as mere custody, and any unlawful appropriation of the goods under his custody constitutes larceny.

Now, when the possession is independent possession by virtue of a business operation which is to be performed outside the place under the immediate control of the owner, which entrusts the keeper of that property with some control, care or dominion, product of the keeper's own discernment, the holding of the property is considered rather as a deposit, delivery or relation of trust, that is, it is understood that the person is himself in the lawful possession of the property or things, and any unlawful conversion of the property in his possession constitutes embezzlement: 2 Wharton, *Criminal Law 1398* (Lawyers Co-operative Publishing Co., 1932 ed., pp. 1436, 1470, 1483, 1508, 1521; 125 A.L.R. 367—annotation on larceny as affected by distinction between custody and possession; 62 A.L.R. 354, annotation on unauthorized used of another's property by one lawfully in possession thereof as larceny.

■■ The case of *People* v. *Martín*, 26 P.R.R. 587, 588, on which the trial court seems to have relied, is distinguishable. Said case did not consider defendant as the lawful possessor of the appropriated property: "The People of Puerto Rico could not be conceived to have parted with the

possession of the property by appointing a custodian." It deals then with the figurative possession which the State enjoys in relation to its employees. Assuming without deciding that a Justice of the Peace, for the purpose of investigation, may deprive a possessor of the lawful possession granted by the owner, we must conclude that the information filed in this case is not sufficient to sentence defendant-appellant for this possible second crime, and much less for a crime of grand larceny.

The judgment appealed from must be reversed, without precluding the prosecuting attorney from filing a new information for the offense of embezzlement, if he deems it to be proper.