Frank RASHAP, Plaintiff-Appellant,

v.

Herbert BROWNELL, Attorney General of the United States, Defendant-Respondent,

Aramo-Stiftung, Defendant-Intervener-Respondent.

No. 170, Docket 23797.

United States Court of Appeals Second Circuit.

Argued Dec. 16, 1955.

Decided Jan. 20, 1956.

Monroe Collenburg, New York City (Hardin, Hess & Eder and Timothy P. Walsh, New York City, on the brief), for plaintiff-appellant.

Dallas S. Townsend, Asst. Atty. Gen. (Leonard P. Moore, U. S. Atty. for Eastern Dist. of N. Y., Brooklyn, N. Y., and James D. Hill, George B. Searls, and Westley W. Silvian, Office of Alien Property, Washington, D. C., on the brief), for defendant-appellee.

Lawrence S. Lesser, Washington, D. C. (Paul, Weiss, Rifkind, Wharton & Garrison, New York City, and Pehle, Lesser, Mann, Riemer & Luxford, Washing-

ton, D. C., on the brief), for defendant-intervener-respondent.

Before CLARK, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

CLARK, Chief Judge.

The plaintiff, a practicing attorney in New York City, sued under § 9(a) of the Trading with the Enemy Act, 50 U.S.C. Appendix, § 9(a), to establish a possessory lien to cover the reasonable value of his services as claimed "agent and custodian" of money and securities in a safe deposit box at the Chase National Bank in New York City in the name of Oak Commercial Corporation until vested by the Attorney General of the United States as alien enemy property in 1948. The Attorney General, as Alien Property Custodian, has now determined upon the return of the property to Aramo-Stiftung, a foreign, but nonenemy, foundation, as owner, reserving, however, sufficient funds to answer this claim of the plaintiff and another like claim of Monroe Collenburg, his associate and counsel on this appeal. Judge Inch concluded that the plaintiff did not have such possession as would support a lien, and hence he granted a summary judgment against the plaintiff on motions of the Attorney General and of Aramo-Stiftung, which had been permitted to intervene in the action. At the same time the judge denied leave to the plaintiff to file a supplemental complaint against the intervening defendant for the amount alleged to be due as the reasonable value of such services. From these orders and the judgment dismissing the complaint plaintiff appeals.

At the outbreak of World War II in 1939, plaintiff was an associate and employee of the law firm of Hardin, Hess & Eder in New York City, and continued as such until 1945, when he became a partner. Also associated with the firm in 1939 was one Max Habicht, whose uncle Max Kolb, a Swiss lawyer located in Zurich, desired to make arrangements in the United States for the safekeeping of funds and securities of his clients in occupied territory. Because of the need felt to avoid disclosure of the names of such clients and to avoid difficulties consequent upon the death of an individual and claims of death dues or taxes, the parties determined upon the organization of a New York corporation, Oak Commercial Corporation, which, pursuant to plan, rented a safe deposit box for the safekeeping of the property of Kolb's clients. So Kolb transmitted to the corporation well over a million dollars in cash and bearer securities which were placed in the box and kept there until vested as alien enemy property by the Attorney General in 1948. The documentary records before the court below show beyond question this possession of the corporation; and plaintiff's claim has to be, and is, based upon his right of access to the safe deposit box as an officer and in the right of the corporation.

From the beginning plaintiff was an officer, at first as vice-president and secretary, while Habicht, to whom all the stock was issued, was president and treasurer. In 1944 Habicht, upon being appointed an adviser to UNRRA, terminated his relations with the corporation and transferred his stock to the plaintiff, who became president and treasurer, while Collenburg became vice-president and secretary. According to votes of the Board of Directors taken with the knowledge and consent of Kolb, plaintiff and Habicht had joint access to the safe deposit box hired by the corporation from January, 1940, until November, 1944; and thereafter plaintiff and Collenburg had such access. In his brief plaintiff stresses the claim that he had "exclusive" access to the box; whether material or not, this is not substantiated by the corporate records, which show at all times that only the joint access noted above was permitted.

So plaintiff's real contention is that his right of access with another as a corporate officer gave him sufficient possession so that he could assert a lien upon the fund for the reasonable value of his alleged services as custodian of it. It is to be noted that his claim is based entirely upon possession; that he makes no

claim for an attorney's lien, for, as the court pointed out below, it was the firm of Hardin, Hess & Eder, and not plaintiff, which was retained by Kolb to organize the corporation and to act in the matter; and that all fees and disbursements which the firm has billed to the defendant intervener have been paid.

■ We think it quite clear, as Judge Inch concluded, that an officer of a corporation as such does not have possession of the property which is committed to the corporation itself to hold. The distinction would seem quite clearly to go back to the old law as developed in Holmes' classic discussion in The Common Law 226 et seq. (1881) that a servant has mere custody, and not possession. So the law is thus restated: "A servant having merely custody, as distinguished from possession, of things entrusted to him by the master has no lien thereon." 2 Restatement, Agency 1089 (1933). This has been definitely applied, for example, to the case of a bank teller, Chanock v. United States, 50 App.D.C. 54, 267 F. 612, 11 A.L.R. 799, with annotation at pages 801–808, and, we think, is sustained generally in the cases. See, e. g., Fitch v. State of Florida, 135 Fla. 361, 185 So. 435, 125 A.L.R. 360, with cases collected at 371–381; State v. La France, 350 Mo. 1261, 165 S.W.2d 624, 146 A.L.R. 529, with citations at 574–579. And the "anomalous distinction" of Holmes, op. cit. supra, where the servant receives the thing from another person for his master has no point here on the facts.

■ Indeed the proposition relied on below would seem elementary in the law of possession, which under the well-known authorities requires in the possessor not merely a physical relation to the object, but also the proper intent in law. Holmes, op. cit. supra, at 216, 218–227; Shartel, Meaning of Possession, 16 Minn.L.Rev. 611; cf. Morris Plan Industrial Bank of New York v.

Schorn, 2 Cir., 135 F.2d 538, 540 and note. Here there never was the slightest doubt but that all parties plainly intended the corporation to have the possession.[1] Plaintiff suggests going behind the corporate entity; but this seems a strange suggestion from him, who was one of those arranging for, and thus recognizing, the unique utility of the entity concept to carry out the planned program. The corporate veil is drawn aside on behalf of those who may have been defrauded through use of this legal form, not for those who have made use of it. See L. Hand, J., in Sun-Herald Corp. v. Duggan, 2 Cir., 160 F.2d 475, 478. Plaintiff suggests certain possibilities from the criminal law, as that he might have been subject to embezzlement, and not larceny, had he purloined the funds; but on the authorities his premise seems doubtful, if not untrue, and in any event we see no profit in wandering down the bypaths of some local statutory law of particular crimes. No practical reasons suggest themselves for extending the law of possession from the corporation, as the parties intended, to its officers, as they clearly did not intend, but wished to avoid by choosing the corporate device. There is no real dispute as to the basic facts; but the law does not sustain the plaintiff's attempted conclusion, and the summary judgment and first order below must be affirmed.

The parties have extensively briefed the further question whether in any event New York law recognizes a lien in an agent in possession for his custodial services. This issue seems in substantial doubt, since this type of lien is not included in the rather precisely defined liens of New York law; but since the answer is not necessary for our decision, we need not face the problem here.

Turning to the second issue presented on this appeal, we note that Judge Inch, in denying leave for the filing of the proposed supplemental complaint, gave no

1. We need not discuss whether the corporation itself had actual or merely "constructive" possession. See National Safe Deposit Co. v. Stead, 232 U.S. 58, 67–70, 34 S.Ct. 209, 58 L.Ed. 504.

reasons, but did provide that his order was without prejudice to a suit by plaintiff under § 32(f) of the Trading with the Enemy Act, 50 U.S.C.Appendix, § 32(f), giving rights to proceed by attachment or otherwise against persons to whom vested property is being returned. This postpones to another day a dispute rather thoroughly explored already, for the depositions and the voluminous correspondence now of record pretty well illuminate the relation of these New York lawyers with Dr. Kolb and the owners of the property. In fact it provided the basis for Judge Inch's finding cited above that the lawyers had already been paid for their legal services. Certainly judicial economy is not served by reserving this portion of the total dispute for another day. And if there should turn out, as is perhaps vaguely suggested, some unexplored questions of obtaining jurisdiction over the defendant intervener in some later action (as to which of course we express no opinion) these but suggest additional grounds why the property should not be adjudicated to and taken by the intervener until the services expended in its conservation are compensated to any or whatever extent found legally deserving.

Hence the result reached below seems anomalous on the equities and on standards of procedural convenience. But we think plaintiff brought much of the trouble on his own head by calling his claim a "supplemental complaint." This made it easy for the intervener to follow and build upon his lead to show that of course the facts at the basis of this claim for services were not "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented," as specified in Fed. Rules Civ.Proc. rule 15(d), dealing with "Supplemental Pleadings." Actually what we have here is a claim made against a new party who was not in the case at all—and indeed does not seem even to have been known—when the original complaint was filed. Traditionally the concept of a supplemental complaint has been rather limited to embrace only a late embroidery of the claim already stated, or, as restricted in much of state procedure, to one which does not introduce a "new cause of action." See references in Clark, Code Pleading 741–744 (2d Ed.1947). Under the more flexible procedure of the federal rules, such limitations are perhaps out of place; and, in any event, a name or label attached to a pleading is not irretrievably disastrous. It happens that the writer, disagreeing in Technical Tape Corp. v. Minnesota Min. & Mfg. Co., 2 Cir., 200 F.2d 876, 879, has urged a more flexible view than appealed to his brethren, one which would thus at least permit of the curing of a defective complaint by a supplemental pleading; and the Advisory Committee has now so recommended. Report of Proposed Amendments to the Rules of Civil Procedure for the United States District Courts, October 1955, p. 22, with Note, pp. 22, 23, citing authorities. In any event, plaintiff's resort to an inapt label should not be used to limit the relief to which he is otherwise entitled.

■ For in actual essence what plaintiff asks to file is a *counterclaim*, or at least a *cross-claim*, directed against the new party who has successfully sought to enter into the dispute. The rules do not prohibit such counterclaims, but, on the other hand, at least encourage their presentation; note, for example, F.R. 13(e), authorizing the presenting of a late maturing or acquired counterclaim by way of supplemental pleading, or F.R. 13(g), providing for the extensive filing of cross-claims among co-parties. But further, this so clearly arises out of the same transactions or occurrences that give rise to the original claim that it should be viewed as a compulsory counterclaim under F.R. 13(a), which plaintiff was under a duty to present under pain of otherwise losing it. See, e. g., United Artists Corp. v. Masterpiece Productions, 2 Cir., 221 F.2d 213, and cases there cited. The demand for judgment upon the claim here after allegations that plaintiff's services in issue

were of the reasonable value of $24,229.-00 was for that amount, together with interest and costs, "in addition to the relief sought in the original complaint herein." Whether or not the court could nevertheless dismiss this claim without prejudice, F.R. 41(b), but see F.R. 13(i) and 42(b) providing only for separate trials, we need not determine, since we think that under the circumstances of an almost, if not quite, complete record already formed, such dismissal to provoke new litigation later was at least an abuse of discretion.

There remains the objection of the Attorney General as defendant that he, as representing the Government, cannot be brought into such a dispute between opposing private citizens. But we think he has himself provided the answer when in his brief he points out that he is only a stakeholder without interest in the outcome other than to see that *his* return of the property is in accordance with the statute, and again when he explains that he made no objection to the intervention of Aramo-Stiftung, "because it is the party who will sustain the ultimate pecuniary loss in the event appellant prevails." Had the Government been at all prejudiced, it would seem that he should have pointed this out by making objection to the order of intervention; his decision not to object underlines the lack of prejudice. Indeed, as it seems to us, the Government (as well as everyone else interested, not excluding the court) will gain by a final termination of this litigation without the possibility of later claims by attachment or other litigation directed against the fund. The case of United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058, cited by him, seems to us clearly not in point; that dealt with the substantially different problems and procedure of claims against the Government under the Tucker Act, 28 U.S.C. §§ 2401, 2402, and there the United States was being brought into litigation by a claim against a claimant against it under special New York statutory process available to a judgment creditor and thus was being called upon to join with its claimant in jointly defending the creditor's action.

The order denying leave to file this pleading must therefore be reversed. Although, as indicated, the record appears to be both voluminous and complete, we do not think a final judgment is yet appropriate. The action should be remanded for answering pleading by the intervener and then for such hearing and disposition upon the merits as the court may deem appropriate.

The order of the district court granting summary judgment is affirmed; the order denying leave to file the so-called supplemental complaint and dismissing it without prejudice is reversed and the action is remanded for further proceedings on such complaint in accordance with this opinion.