RAWLS, Judge.
To an indictment charging that on April 1, 1961, Robert Thomas Jenner “did unlawfully take, steal and carry away, the following described personal property to-wit: Six (6) Boats * * * a better or more particular description of said personal property being to the Grand Jurors Unknown”, the defendant pleaded not guilty, was convicted of grand larceny by a jury in Taylor County, sentenced to three years imprisonment, and in due time appealed.
The facts proven were that Jenner by oral agreement made in January, 1961, became a salesman for Falcon Boats, Inc., a *251 new pleasure boat building firm which had temporarily closed its shop after about one year of operation due to difficulty in selling its boats. Under this agreement defendant was to receive a 7% commission on all sales. The titles to the boats were to remain in Falcon until sold to dealers. Defendant was to transport the boats at his own expense but was to be reimbursed by the dealers at the rate of fifty dollars per boat upon consignment or sale. There was a misunderstanding as to other terms of the agreement. Jenner and his father-in-law (a stockholder) understood that when Jenner had demonstrated his sales ability by selling the fourteen boats on hand, he would be given an exclusive sales contract. Other stockholders testified that if he so demonstrated his ability, they would then consider his request for the exclusive sales contract. Although there was no agreement for reimbursement of advertising expenses, Falcon did pay two printing bills incurred by appellant who now contends that he should be paid for additional promotion expenses.
Jenner transported Falcon boats from Perry, Florida, to St. Louis, Missouri where he promoted sales with signs, advertising materials and by placing boats on display in boat shows. By the end of March he had been successful in consigning or selling to dealers all of the original boats except six. He purchased a second-hand six boat transport trailer and a truck to pull it, and returned on April 1, 1961, to Perry where he picked up the last six boats, these being the ones alleged to have been stolen. Since these boats were an old model, Falcon wanted them sold to dealers and not consigned. However, the weather in the spring of 1961 was so bad boats were hard to sell, and Jenner stored them in St. Louis to get them out of the weather.
Vereen, an officer and business manager of Falcon, went to St. Louis around the first of May, at which time he conferred with Jenner about the progress of boat sales. There Vereen denied that Falcon had agreed.to giye Jenner the exclusive sales contract. Jenner then decided to see a Missouri lawyer about protecting his investment in the promotion of the boats. Vereen testified that on that visit Jenner refused to let him see the boats. Jenner testified that he did not ask to see them but wanted to know if he still had them or had sold them.
Jenner got orders for seven more boats (new models) on May 12, 1961, and talked by phone to Vereen who told him he had nine new boats completed. Vereen admitted this conversation in his original testimony, but when called back to the stand on rebuttal he denied the telephone conversation but did admit that he told him nine boats were completed. Jenner came back to Perry on May 17, 1961, to get the new model boats to fill his orders and found that only one boat was finished. He became angry with Vereen and refused to talk to him but discussed the boat business with one of the officers who was to replace Vereen as business manager. Jenner was then arrested on charges of embezzlement. While in jail Jenner was told that if he would reveal the whereabouts of the six boats, the criminal charges would be dropped but Jenner maintained that in. order to protect his-claims against Falcon for the funds they owed him, he would not tell them. He did have Mr. Burton, Falcon’s lawyer, call his St. Louis lawyer to assure Falcon Boats, Inc. that the boats were stored in St. Louis,
The salient point involved on this appeal' is venue. Although the indictment did not allege venue, defendant did not move to quash. The trial court gave the essential[1] instructions. Defendant contends that the evidence as presented failed h> supply the deficiency of alleging venue but, on the contrary, clearly reflects that venue was- improperly laid in Taylor County and the circuit court of that county was without jurisdiction to try this cause. We conclude that this contention is well founded. The sole question is whether the above facts show that the crime alleged was committed in Taylor County.
*252 Although it has often been stated that venue in criminal cases need not be established beyond a reasonable doubt, only a “violent” presumption arising from the evidence has been held to suffice — as for example, where the crime occurred in a locality or near a landmark which the court and jury must have known, as a matter of common knowledge, was situated in the county of the trial.[1] Such proof cannot be left to guesswork on the part of the jury.[2]
The indictment was framed under Section 811.021 which provides: “A person who, with intent to deprive or defraud the true owner of his property or of the use and benefit thereof, or to appropriate the same to the use of the taker * * *. Having in his possession * * * as * * * employee * * * goods and chattels * * * appropriates the same to his own use, or that of any other person * * * ” is guilty of larceny. Therefore, intent to deprive or defraud the true owner or to appropriate the property to the use of the taker or another is a specified element of the crime fundamental in determining venue.[3] To establish venue the burden was upon the State to prove that the intent to commit the offense occurred in Taylor County,[4] or under the rule that a “presumption of a criminal intention may arise from proof of the commission of an unlawful act”,[5] the burden was upon the State to prove that defendant appropriated his employer’s boats in Taylor County so-that scienter will be presumed. But one presumption or inference cannot be based, upon another.
In this cause the defendant lawfully-obtained possession of the boats in Taylor County, Florida, and transported them to St. Louis with the owner’s consent, for the purpose of selling same. There is no evidence that' defendant did not have the authority to store the boats or otherwise protect the property of his employer from the-elements.[6] On the contrary, the evidence shows that the boats were so stored without objection, and there they have remained. There was no evidence that defendant was ever requested to return the boats, that the cost of return transportation was ever tendered to him, or that his job as salesman was ever officially terminated so as to-place upon him the duty of returning the property.[7] There is no proof of an overt act amounting to an actual appropriation or conversion of the boats[8] to the use of the defendant or another from which an intent to deprive or defraud can be inferred. Even if an appropriation or an intent to-defraud could be inferred, it would not support the pyramided inference that such intent occurred in Taylor County.
The only evidence, and that being controverted, is that the defendant first “secreted” the boats when he refused to show them to Vereen in St. Louis in May. If *253 that were the case and if such an act amounted to an appropriation with an intent to deprive the owner of its property, venue would be in Missouri and not in Taylor County, Florida. However, the State relies heavily upon testimony of the defendant relative to statements made by him after he was jailed. In essence this testimony was to the effect that when officers of Falcon had him jailed, he then knew that the time and money he had spent in promoting Falcon boats in anticipation of an exclusive sales contract was a loss; he then rendered an account of expenses incurred; prior to that time he had never been asked the specific address of the location of the six boats; he had no intention of depriving the owner of its property, but refused to give the specific address after being jailed due to his claims against the company; and he did have Falcon’s attorney call his attorney in St. Louis, the latter assuring him the boats were in storage in St. Louis. This case being replete with evidence of an ambiguous agreement between defendant and his employers, the facts in proof are equally consistent with a rational conclusion other than guilt and are insufficient proof of intent.[9] Criminal courts were not created, nor do they exist, for the pttrpose of settling civil disputes.
This case is analogous to Davis v. State,[10] where Davis lawfully took possession in Dade County of a tractor-trailer loaded with potatoes with directions to deliver the potatoes in St. Louis, Missouri. He delivered the potatoes and was indicted in Dade County for larceny of the vehicle. The district court held that there was no evidence of the formulation of an intent in Dade County to commit the crime.
Accordingly, the judgment and sentence of the lower court are reversed with directions to discharge the appellant from the cause.
CARROLL, DONALD, Acting C. J., and WIGGINTON, J., concur.

. Bowman v. State, 114 Fla. 29, 152 So. 739 (1934); 9 Fla.Jur., Criminal Law, § 101 and eases cited therein.

. Powell v. State, 132 Fla. 659, 181 So. 901 (1938).

. F.S. Section 811.021, F.S.A., and 9 Fla. Jur., Criminal Law, § 100.

. Cf. Davis v. State, 96 So.2d 667 (Fla.App.3d, 1957).

. Simpson v. State, 81 Fla. 292, 87 So. 920, 921 (1921).

. Cf. Fitch v. State, 135 Fla. 361, 185 So. 435, 125 A.L.R. 360 (1938) where a nightwatchman with custody of the store, took money from the cash drawer, but was not authorized to do so for any purpose except perhaps to protect it for his employer.

. Cf. Nunamaker v. State, 116 So.2d 450 (Fla.App.2d, 1959) where the evidence consisted of 1. a letter terminating defendant’s agency, thereby putting him under a duty to return his principal’s-money and 2. an admission made by defendant to a prosecuting witness that he-had spent the money.

. See Bates v. State, 102 So.2d 826 (Fla.App.2d 1958) where it was held that the-offense under § 811.021(b) took place when and where defendant-bailee sold, the property and accepted payment therefor.

. Gustine v. State, 86 Fla. 24, 97 So. 207 (1923).

. Davis v. State, supra. See also Powell v. State, supra.