W. R. FURR v. STATE OF FLORIDA

9 So. (2nd) 801                                    June Term, 1942
October 2, 1942                                       Division A

234

*Whitaker Brothers,* for petitioner.

*J. Tom Watson,* Attorney General, *Millard B. Conklin* and *Woodrow M. Melvin,* Assistant Attorneys General, and *H. Tolbert Black,* Special Assistant Attorney General, for respondent.

BUFORD, J.:

On ceriorari we review judgment of the Circuit Court of Hillsborough County affirming judgment of conviction of aggravated assault.

Petitioner was informed against, being charged with the offense of assault with intent to commit murder in the first degree, but at close of testimony the County Solicitor announced that he would concede that no offense greater than aggravated assault was shown to have been committed and elected to contend for conviction of that offense only.

The petitioner poses three questions for our determination, as follows:

"Question 1.

"Where a man is charged with the offense of shooting a lad of 15 years of age, and the boy, while testifying for the State in Chief, breaks down and cries before the jury, thereby creating an intense feeling of sympathy for the lad testifying, and intense prejudice against the defendant, is it not error for the trial court to deny motion of defendant to withdraw a juror and declare a mistrial on account of said prejudicial occurrence, and the inability of defendant to be accorded a fair and impartial trial on account thereof?"

"Question II.

"Is it not error for the prosecuting attorney in his argument to the jury to make an appeal to their prejudice and passion, and make an argument calculated to arouse and inflame their passion and prejudice against defendant and capitalize upon prejudicial occurrences which took place during the progress of the taking of testimony?"

"Question III.

"When the jury makes known to the trial judge that they are in disagreement as to the testimony of certain witnesses, is it not the duty of the trial judge to aid and assist the jury by causing said testimony to be read to them by the court reporter, instead of captiously cutting the jury short and ordering them back to their room?"

In answer to the first question we only say that petitioner has not made it clearly to appear that the trial court departed from the essential requirements of the law in pursuing the course reflected by the record in this regard.

Under the point presented in the second question we are constrained to say that the record shows the county solicitor overstepped the bounds of propriety as shown by the record in his argument to the jury, in contending that the evidence warranted a conviction of a higher offense than that which he had stated to the court and counsel was the highest offense of which the evidence would warrant conviction.

The statements complained of made by the prosecuting officer and duly objected to and about which no action was taken by the Court to correct, were:

"Now, gentlemen of the Jury, as I stated before, it is the province of the State to bring this testimony before you gentlemen and present the State's case in the most favorable manner of which we are capable. We have done that. No matter what you do with this defendant, gentlemen of the jury, my conscience is clear; but, gentlemen of the jury, it is up to you to do your duty. It is up to you gentlemen to do your duty and if this evidence convinces you—evidence of the State convinces you of the guilt of the defendant, to bring in a verdict of guilty.

Gentlemen, we prosecute these cases for the good of the community. I know that you gentlemen want to live in a peaceful, law-abiding community where your children will be safe; and although you may have boys who overstep the bounds sometimes and may not be as courteous as you might, we all try to make our children courteous and to respect their elders, and we try to keep our boys from being rowdy, like these children were that night. But gentlemen of the jury, the fact that these boys were a little rowdy out there in the street and might have been indiscreet, gave this defendant no right to go out there and shoot them, or go out there and assault them, use his pistol; and if that boy had died, gentlemen of the jury. this defendant would have been guilty of murder in the first degree. So, gentlemen, for the sake of the community, for the sake of the law . . ."

Here the prosecutor was interrupted, as follows:

"Mr. Whitaker: If your Honor please, I object to that and ask the Court to instruct the jury not to consider that remark.

"The Court: All right. (To the jury) Gentlemen, disregard that last statement."

It is not clear how much of these paragraphs was covered by the Court's admonition, but it appears to have been addressed to the last uncompleted sentence.

The argument was not responsive to the issues.

There had been no claim of any right or justification of the shooting of the little boy. There was no question but that the boy had been shot by someone without justification or lawful excuse. The defendant testified that he did not do the shooting, was not present when it happened and knew nothing about how it happened, or who did it. So the matter of justification or excuse was not involved. This departure from the proper course of conduct of the trial, of itself, would probably not warrant the quashing of the judgment.

The third question, however, presents a more serious departure from the essential requirements of the law.

The record shows that after the jury retired under the

charge of the Court to consider of their verdict, and after having spent several hours in the jury room, the jury returned to the court room and the following incidents occurred:

"A juror (Addressing the Court). A question came up; some contend that part of the testimony was one thing, and some contend another thing.

"The Court: I don't think it is proper for you to reveal your deliberations, until you come back in with a report. I cannot discuss the testimony with you.

(Thereupon the jury again retired, and later returned into court with the following)

'Verdict of the Jury
'Tampa, Florida, Nov. 5, 1938.

'We, the jury, find the defendant, W. R. Furr, guilty of aggravated assault as charged in the information. So say we all.

J. Floyd Griffin, Foreman.' "

It is clear that the jury gave the court to understand that some jurors remembered the testimony of some witness or witnesses one way, while others remembered it another, and that it was necessary for a fair trial that this misunderstanding be cleared up.

Section 320 of the Florida Criminal Procedure Act provides:

"Jurors May Return to Court Room for Instruction.

"After the jurors have retired to consider their verdict if they desire additional instruction upon any point of law arising in the cause, or to have any testimony about which they are in doubt or disagreement, read to them, they shall, upon their request, be conducted into the court room by the officer who has them in charge and there the court shall give them such additional instruction or shall order such testimony read to them. Such instruction may be given and such testimony read only after notice to the prosecuting attorney and to counsel for the defendant."

It was the duty of the trial court when the jury returned

into court room after having deliberated in the jury room for several hours and made the announcement to the trial court, "A question came up; some contend that part of the testimony was one thing and some contend another thing," to then ascertain which witness it was whose testimony was the subject of disagreement and, if that witness had given any material testimony, to then have the testimony of such witness read to the jury. If all testimony of such witness was irrelevant and immaterial, then the court should have so advised the jury and that they might disregard the same.

It, therefore, follows that certiorari is awarded and the challenged judgment is quashed.

So ordered.

BROWN, C. J., WHITFIELD, and ADAMS, JJ., concur.