**HERBERT E. FINE v. THE STATE OF FLORIDA**

14 So. (2nd) 408                                     June Term, 1943
July 9, 1943                                          Division B

298

*J. H. Swink,* for appellant.

*J. Tom Watson,* Attorney General, *Woodrow M. Melvin,* Assistant Attorney General, *Robert R. Taylor,* County Solicitor and *Glenn C. Mincer,* Assistant County Solicitor, for appellee.

THOMAS, J.:

The defendant was convicted of the abominable and detestable crime against nature, denounced in Section 800.01 Florida Statutes, 1943.

He contends that the judgment against him should be reversed because: (1) the information was defective, (2) the venue was not proven, (3) the evidence was insufficient.

It was charged by the State that the offense was committed "during the summer months," nineteen forty-two which appellant claims was so indefinite as to render the in-

formation invalid. No motion to quash was presented, but it appears from the record that the defendant requested a bill of particulars that the date might be fixed more definitely. Although no order was entered, at the conclusion of a colloquy among the judge and counsel the county solicitor stated "that the date of the alleged offense is September 1, 1942, or prior thereto." After the defendant was found guilty his attorney made an oral motion in arrest of judgment adopting as grounds of it those appearing in the one for a bill of particulars. In the motion for new trial no specific mention was made of the date, but one ground urged was the ruling on the effort to arrest judgment.

We have given in some detail the procedure with reference to the infirmity claimed in the information because of the form of appellant's first question which is, in substance: Should the motion to arrest have been granted, because of the indefiniteness of the time averred, *" 'during the summer months' and more particularly, 'September 1, 1942 or prior thereto?' "* Thus, he incorporated the quotation—we have italicized it—from the bill of particulars, although it was no part of the information. Kittleson v. State, 9 So. (2nd) 807. The answer may be found in the provisions of the Criminal Procedure Act, Chapter 19554 Laws of Florida, Acts of 1939. There, Section 239 (Section 920.02 Florida Statutes, 1941), motions in arrest of judgment were abolished and matter properly presentable by them was authorized to be included in motions for new trial. More important, by Section 142 (Section 909.06 Florida Statutes, 1941), a defendant who does not move to quash is considered to have waived all defects which are grounds for such a motion. Taking appellants first question literally the answer to it would be unfavorable to his contention because it challenged the propriety of a motion in arrest, no longer available. Considering its substance instead of its form we must still rule against him, for having pleaded to the information he cannot now raise the objection to the date appearing in the information. Smith v. State, 147 Fla. 191, 3 So. (2nd) 516. In reaching this conclusion we have considered that, although the exact day of alleged offense was not given, the summer months of nineteen

forty-two were June, July and August, according to popular understanding; were embraced within the period beginning with the summer solstice, June twenty-first, and ending with the autumnal equinox, September twenty-second, according to astronomical calculation. The earliest date under either definition was within two years of the filing of the information, in October of the same year.

The second question is not well founded. It is based on failure of the testimony expressly to show that the act charged was committed in Dade County, Florida. It is true that venue was not established by direct mention of the county and state but there were such references to localitiy as would lead to the reasonable conclusion that the transactions charged to have been criminal transpired in the place alleged in the information.

A more serious problem is presented by the third question assailing the evidence on which conviction was based. The story of the defendants relations with his victim is so revolting we will state only that part of it necessary to a determination of the point. He, aged seventy, lured a little girl to a secluded spot and after partially disrobing her licked her genitals and put his tongue into them.

We have experienced some difficulty in determining precisely what unnatural sexual acts do, and what do not, constitute the crime. This is largely due to the reluctance legal authors have shown to detail the facts they were considering, because they are always so shocking. This aversion was voiced by Blackstone in his Commentaries over one hundred and fifty years ago: "I will not act so disagreeable a part, to my readers as well as myself, as to dwell any longer upon a subject the very mention of which is a disgrace to human nature." A similar attitude has been expressed about even particularizing in the formal charge, Glover v. State, 179 Ind. 159, 101 N.E. 629.

It is evidently appellants position that there could properly have been no conviction because there was no copulation and to further this theory he states in the brief that this court, in Ephraim v. State, 82 Fla. 93, 89 So. 344, "construed the felony statute condemning the crime against nature as

'the act of *copulation* between two human beings per os'."
He supplied the italics. We do not so understand that
opinion. The question stated in that decision was whether
the crime denounced *comprehended* such an act. By holding
that it included unnatural coition of the kind described the
court did not decide that it excluded all others.

In examining the cases cited in Ephraim v. State, *supra,*
we have gained the impression that the latitude of the act
has been broadened to cover odius sexual relations not orig-
inally considered a commission of the crime against nature.
For example, in Glover v. State, *supra* we have found a criti-
cism of the narrow definition once applied and a reference to
Rex v. Samuel Jacobs, 1 Russell & Ryan 331 (1817), English
Reprint Vol. 168, page 830, where copulation per os was held
not to constitute sodomy. Authorities have generally agreed
that the crime may be committed in many ways, although it
may have originally been confined to those cases involving
intercourse per anum. We have lately held in Lason v. State,
Fla., 12 So. (2nd) 305, that it may be committed per os.

Considering the conduct condemned and object attempted
to be accomplished by the law this writer sees no distinction
between the insertion of the male organ in the mouth as de-
scribed in Lason v. State, *supra,* and placing the tongue in
the female organ, as here. Both, unquestionably, are
abominable and detestable; both offend nature's laws; both,
doubtless, spring from a depraved sexual desire. The base
immorality displayed in either case justifies any punishment
which may be meted out under the law. At one stage in the
progress of Anglo-Saxon jurisprudence the penalty was burn-
ing or burying alive.

We conclude that the judgment should be, and it is—
Affirmed.

BUFORD, C. J., BROWN, and SEBRING, JJ., concur.