DREW, E. HARRIS, Associate Judge.
Robert L. Bates appeals from an order, judgment and sentence of the Criminal Court of Record of Broward County entered consequent upon a jury verdict of guilty of grand larceny. The subject of the larceny was a pony which was entrusted to him as a bailee.
The statute under which Bates was charged and convicted is Section 811.021, F.S.A., the pertinent portion of which reads as follows:
“(1) A person who, with intent to deprive or defraud the true owner of his property or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person:
* * * * * *
"(b) Having in his possession, custody or control, as a broker, bailee, servant, attorney, agent, employee, clerk, trustee, or officer of any person, association, or corporation, member of co-partnership, pool or joint adventure, or as a person authorized by agreement, or by competent authority, to hold or take such possession, custody, or control, any money, personal thing or action, goods and chattels, evidence of debt, contract, property, or article of value of any kind, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof; * * *
“(c) * * * steals such property, and is guilty of larceny.
“(2) If the property stolen is of the value of one hundred dollars or more, the offender shall be deemed guilty of grand larceny, and upon conviction thereof shall be punished by imprisonment in the state penitentiary not exceeding 5 years, or in the county jail not exceeding 12 months, or by fine not exceeding $1,000.00.”
The evidence is conflicting in many respects. On several material points— and particularly on the question of whether the owner sold the pony to Bates — it is wholly irreconcilable. The jury resolved these conflicts and chose to believe, as was its right, that the pony,' after being entrusted to Bates by the owner, was sold by Bates to a third person for $175 and delivered to him with the intention on the part of Bates to permanently deprive or defraud the owner thereof. We think the evidence was clearly susceptible of this conclusion.
Three principal propositions are relied on by Bates for reversal. First, he says the action was barred by Section 932.05, F.S.A., the statute of limitations.
The record shows that the sale was made to the third party on September 15, 1954, whereas the information charging the offense was filed May 17, 1956, well within the two year period. The location or whereabouts of the pony or the date of its delivery to Bates by the owner is of no consequence in the consideration of the question of the statute of limitations. The offense denounced by the state is the unlawful conversion of the pony with intent to deprive the owner thereof. Obviously, so far as the facts in this case are concerned, this took place when Bates sold it to the third party, accepted the payment thereof, and either delivered it or caused it to be delivered to him. There is no merit, therefore, to the first point urged by Bates.
Next, Bates urges that venue was not proven. In the brief and in the argument before this court, attempts are made to bulwark this argument by showing that the pony’s whereabouts were never shown to be in Broward County. Again this is of no consequence. The crime took place when the pony was sold, the purchase price was paid, and title to the pony passed (or was attempted to be passed) to the third party. This took place, according to the record, at 2001 South Andrews Avenue, the location of the third party’s business *828 known as Peninsular Supply Co. For the sake of clarity, we quote from the record that part of the testimony relied upon by the state to prove venue.
“Q. Will you state your name and occupation, sir? A. D. D. Oliver, Jr., President, Peninsular Supply Co.
“Q. Peninsular Supply Co. down on South Andrews? A. Yes sir, 2001.
“Q. How long have you been a resident of Broward County? A. Forty-two years.
* * * ‡ * ♦
“Q. Mr. Oliver, calling your attention to on or about September 15th of 1954, did you have the occasion to enter into a business transaction with Mr. Bates? A. Yes sir, I bought a pony for my daughter from him.
“Q. Now where was the purchase of this pony, where was the sale consummated? A. In my office.
“Q. Where is your office? A. 2201 South Andrews, or 2001, pardon me.
"Q. All right sir, now tell us about that transaction, what happened in your office on that day? A. Well Mr. Bates came in, and I had talked to him previously about purchasing this pony for my daughter, first I had asked him to bring some ponies over to East-side School for a Carnival, and he brought this pony over there, and my daughter liked it, and so I talked to him about purchasing the pony at that time, I told him I didn’t want it as a stallion, he agreed to castrate the pony and he came in at this time to complete the deal.
“Q. And was the deal completed in your office? A. Yes, I paid him One Hundred and Seventy Five Dollars for the pony.
“Q. Were there any papers changed hands? A. No sir.”
It is true that venue was not proven by a direct question and answer establishing the place as Broward County. The evidence, however, viewed in the setting in which it was given and weighed in the light of the court’s instruction that to establish guilt the state is required to prove that “the offense, if any offense was committed, was committed in Broward County, Florida,” is clearly sufficient to establish venue under well settled principles of the Supreme Court in such cases as Warrace v.. State, 1891, 27 Fla. 362, 8 So. 748; Low-man v. State, 1920, 80 Fla. 18, 85 So. 166;. Fine v. State, 1943, 153 Fla. 297, 14 So.2d 408; and similar cases. It is said in the Lowman case, supra:
“Where the evidence does not expressly locate the crime as having been committed in the county charged in the indictment, but there are in the evidence references to various localities and landmarks at or near the scene of the crime, known by or probably familiar to the jury, and from which they may have reasonably concluded that the offense was committed in the county alleged, it is sufficient proof of venue.”
and in the Fine case, supra [153 Fla. 297, 14 So.2d 409]:
“ * * * It is true that venue was not established by direct mention of the county and state but there were such references to locality as would lead to the reasonable conclusion that the transactions charged to have been criminal transpired in the place alleged in the information.”
We therefore conclude that there was competent evidence in the record on the basis of which the jury could lawfully find, as it did, that the venue was Broward1 County.
The last proposition urged upon-us for reversal is the failure of the trial court to order certain parts of the evidence re-read to the jury after they had! *829 retired to consider their verdict and returned to the courtroom upon a failure to agree on a verdict. The statute governing this question is Section 919.05, F.S.A., and reads as follows:
“919.05 Jurors may return into courtroom for instruction. — After the jurors have retired to consider their verdict if they desire additional instruction upon any point of law arising in the cause or to have any testimony, about which they are in doubt or disagreement, read to them, they shall, upon their request, be conducted into the courtroom by the officer who has them in charge and there the court shall give them such additional instruction or shall order such testimony read to them. Such instruction may be given and such testimony read only after notice to the prosecuting attorney and to counsel for the defendant.”
The record shows the following:
“ * * * The jury then retired to the jury room. After deliberating for a period of time, the foreman announced to the bailiff that it was impossible to reach a verdict, and the Court ordered the bailiff to bring the jury back into the courtroom.
“Court: Gentlemen, the bailiff has advised me that the foreman of your jury has indicated that it is impossible for you to reach a verdict. Is that correct? All answered in the affirmative.
“Court: Let me read you this charge, Gentlemen, and I ask that you pay careful attention to it, as you have the other charges of the Court. The Jury should agree upon a verdict if it is possible to do so without violating your consciences, based upon the evidence. It is the duty of each juror to reason with his fellow jurors with an honest desire to arrive at the truth, and with a view of arriving at a verdict. No juror, from mere pride of opinion, hastily formed or expressed, should refuse to agree with his fellows; nor on the other hand, should he surrender any conscientious view founded on the evidence. The jury should examine any differences of opinion there may be among them in a spirit of fairness and candor, and you should reason together and talk over such differences and harmonize them if it possible so to do. You will therefore, return to your jury room and make an honest effort to agree upon a verdict. Now if you cannot agree within a reasonable time, just let the bailiff know, and I might say this, at the time we went to lunch one of the jurors indicated a desire to read the transcript of this record, if it was available, and I told you that would not be possible, however, if there is any particular portion of the testimony, as I have told you before, that you feel would assist you if it were re-read to you, we will try to have that done. You may now retire to your jury room to further consider your verdict.
“Foreman: We do request reading of the testimony at this time, sir.
“Court: Right now? It may take the reporter a little while to find it. What portion of the testimony do you desire to have read?
“Foreman: The facts of the locations of the principals in this suit, as of the fall of 1954 up through December, let’s start from May up through December.
“Court: If you could tell me whose testimony you are interested in, and not the time involved, it would be difficult as you can understand, to read you testimony concerning any particular time, unless it was the testimony of some certain witness that you can identify.
*830 “Foreman: It would be the testimony of Mr. Maurer, Mr. Bates and Mr. Oliver.
“Court: That would be practically all of the testimony, that would take too much time.
“The Jury then retired to the jury room. After further deliberation the jury announced they had reach (sic) a verdict, and the bailiff brought the jurors back into the courtroom, and the Clerk read the verdict as follows:
“In the Criminal Court of Record In and for Broward County, Florida. Case No. 27609. The State of Florida v. Robert L. Bates.
“Verdict
“We, the jury, at Fort Lauderdale, Broward County, Florida, this ISth day of March, A.D.1957, find the defendant Robert L. Bates guilty of Grand Larceny. So Say We All. Signed: Eugene C. Hedges, Foreman.”
Bates’ counsel at the trial never questioned the correctness of the court’s ruling when it was made. The question was raised for the first time in his motion for new trial and is assigned as error here. The error, if it was such, in rejecting the request of the foreman (See Hysler v. State, 1923, 85 Fla. 153, 95 So. 573; Hall v. State, 1935, 119 Fla. 38, 160 So. 511; Handley v. State, 1936, 125 Fla. 632, 170 So. 748) was not, under familiar rules announced in the above cases, preserved for review. Nor do we consider the error, if any, of such a fundamental character as to warrant our consideration in the absence of being properly preserved. Moreover, while the statute contains mandatory words, it must be construed as the Supreme Court has heretofore construed it (Lutins v. State, 1940, 142 Fla. 288, 194 So. 803; Nelson v. State, 1941, 148 Fla. 338, 4 So.2d 375; Brown v. State, 1943, 152 Fla. 508, 12 So.2d 292) to vest in the trial court’s discretion as to the extent and circumstances in which it may be employed. Furr v. State, 1942, 152 Fla. 233, 9 So.2d 801, presents a factual situation greatly at variance with that presented here. We do not find, in this case, that there was any abuse of the discretion necessarily vested in the trial judge to warrant disturbing the jury’s verdict or the judgment and sentence therein.
Finding no error, we affirm the judgment.
ALLEN, Acting Chief Judge, and SHANNON, J., concur.