224 So.2d 400 (1969)
Joseph M. BERTONE, Appellant,
v.
The STATE of Florida, Appellee.
No. 68-728.
District Court of Appeal of Florida. Third District.
June 17, 1969.
Rehearing Denied July 23, 1969.
William M. Moran, Harry W. Prebish, Richard M. Gale, Miami, for appellant.
Earl Faircloth, Atty. Gen., and Melvin Grossman, Asst. Atty. Gen., for appellee.
Before CHARLES CARROLL, C.J., and HENDRY and SWANN, JJ.
HENDRY, Judge.
The appellant was the defendant below, and was adjudicated guilty and sentenced for the crime of rape. By this appeal, he raises two issues, contending that reversible error was committed at trial.
*401 The first of the appellant's points on appeal urges that the court committed reversible error when it refused to grant a motion for mistrial after each of three separate outbursts, during direct examination, by the prosecutrix. The first remark complained of occurred when the victim, not in response to any question by counsel, volunteered that she had answered questions at defense counsel's office for three hours the preceding day, and that such encounter had resulted in her hospitalization. At that point, the witness was admonished by the trial judge and instructed not to volunteer any further statements.[1] Minutes later, however, she again volunteered that she had been in a deposition which resulted in her hospitalization. At this point, the trial judge again cautioned the witness not to discuss the above matters.[2] Finally, during the course of cross-examination, the witness, in a moment of exasperation, made remarks indicating that she had been threatened and that she was still in great fear for her safety and the safety of her children. The court directed the jury to leave the courtroom, and heard argument of counsel directed to *402 whether or not a mistrial should be granted because of the prosecutrix' outburst. The court thereafter denied the motion for mistrial and ordered that prosecutrix be returned to the courtroom.
The record thereafter indicates a compassionate but firm admonition from the trial court to the prosecutrix, apprising her of the defendant's right to an impartial trial, and urging her to restrain from further emotional outbursts. Thereafter, the jury was returned to the courtroom and the trial proceeded.[3]
It is the state's position that the complained of remarks were not so prejudicial as to raise the absolute legal necessity of stopping the trial and discharging the jury. Kelly v. State, Fla.App., 1967, 202 So.2d 901. We agree with the state's *403 position, and observe that this area is obviously one of great latitude and discretion for the trial judge. It is our considered opinion that such discretion was not abused by a refusal to grant a motion for mistrial. See Furr v. State, 152 Fla. 233, 9 So.2d 801; Wirt v. Fraser, 158 Fla. 777, 30 So.2d 174. We note in passing that the cases relied on most heavily by the appellant are primarily concerned with voluntary remarks made by a police or investigatory officer working on the criminal case which was being tried. See Nalls v. United States, (5th C.A. 1957) 240 F.2d 707; Perecinsky v. Commonwealth, Ky., 1960, 340 S.W.2d 233; People v. Trinchillo, N.Y., 1956, 2 A.D.2d 146, 153 N.Y.S.2d 685. In the situation sub judice, however, we do not feel that the same principles would control regarding the testimony being elicited from the victim of a brutal and heinous sex crime. Within his area of discretion, the trial judge is certainly allowed to recognize the emotional impact that a trial, complete with its probing revelation of the facts of the crime, would have on the prosecutrix. In conclusion then, we hold that the trial judge's admonition to the prosecutrix and thorough instructions to the jury were adequate to protect the appellant's interest in a fair trial.
As second grounds for reversal, the appellant contends that the court erred in permitting the county medical examiner to testify, over objection, that in his opinion, his findings from the examination of the victim were consistent with the medical history and details of the assault as related by her. On direct examination, Dr. Brodsky, the deputy medical examiner for Dade County, stated that the findings he made during his examination of the prosecutrix were consistent within reasonable medical probability with violent, forceable sexual intercourse. Thereafter, during redirect examination of Dr. Brodsky, he was asked, based upon the history related by the prosecutrix and the results of his examination, supra, whether he had an opinion within reasonable medical probability that the results of his examination were consistent with the history received from the prosecutrix. Defense counsel objected in these words: "Objection. This is repetitious. He had previously stated that they were so consistent, your Honor." The objection was overruled and the witness was permitted to testify that the examination was consistent with the history as related by the subject.
By this appeal, the appellant now contends that the witness was improperly allowed to testify, in his capacity as medical examiner, in regard to the relationship between his findings on examination and the history as given by the patient. Marshall v. Papineau, Fla.App., 1961, 132 So.2d 786. See also Troj v. Smith, Fla.App., 1967, 199 So.2d 285. The objection to such testimony is that it is essentially hearsay, being based upon information as related by the patient to the medical examiner. However, the general rule is that the grounds relied upon for objection at trial must be the same as those relied upon during appeal. Stated another way, 2 Fla. Jur. Appeals § 86 says in pertinent part:
"The proper method of preserving errors relating to the admissibility of evidence is to object when the evidence is offered to the trial court. If a proper objection is not interposed at the time the evidence is admitted by the court, the appellant will be regarded as having waived his objection * * * [T]hese principles apply to the objection as well as the admission of evidence."
See also Shea v. State, Fla.App., 1964, 167 So.2d 767. Therefore, we conclude that the trial court did not commit reversible error in permitting the deputy medical examiner to state that his findings were consistent with the history as related to him at the time of the examination by the victim.
The state has cross-appealed another point relating to similar factual evidence which was excluded by the trial court; *404 however, in view of our holding, we deem it unnecessary to consider this cross-appeal.
Thus, for the foregoing reasons, the judgment and sentence being appealed are hereby affirmed.
Affirmed.
NOTES
[1] "Q I appreciate that. I am trying to orient the Court and the jury as to exactly where the Ankara is as it relates to other hotels which are on the ocean side of Collins Avenue. I would appreciate your trying to assist us in establishing that, if you can.

"A Yes, sir. I assisted you for three hours yesterday afternoon in your office. I gave you paper, I gave you all these questions, everything. I have been fully cooperative.
"Mr. Prebish: Your Honor 
"The Witness: It wound me up in the hospital yesterday.
"The Court: All right."
* * * * *
"The Court: When he asks you a question, just answer the question, don't volunteer any statements such as you have done here, and which was not in response to a question. Do you understand? Relative to what he was interrogating you."
[2] "The Court: All right, proceed.

"Q (By Mr. Prebish) Miss [* * *]. you were not in my office yesterday; isn't that true?
"A I was at a deposition yesterday, yes.
"Q You were in my office yesterday at a deposition? Was Mr. Jacobs there with you?
"A Yes, sir.
"Q You are sure it was yesterday?
"Mr. Jacobs: I will stipulate that it was the day before yesterday, Counsel.
"The Witness: Yesterday, I am sorry, I was in the hospital yesterday.
"The Court: Your question was: Were you in his office yesterday?
"The Witness: It was the day before yesterday, then.
"The Court: All right.
"Mr. Prebish: Your Honor, I again ask that the jury be excused.
"The Court: Take charge of the jury, Mr. Bailiff."
* * * * *
"(Witness returns to the courtroom.)
"The Court: Just hold the jury back just a minute.
"Out of the presence of the jury, but in the presence of the Defendant and his Counsel, now, I want to caution you again not to make any reference to the fact that you were in the hospital yesterday. It is unfortunate. We regret that this occurred, you understand, but it doesn't have any relevancy to your testimony here. It isn't proper that you should make any reference whatsoever to having gone into the hospital for whatever the reason may be, so let's make no more reference to that.
"The Witness: I didn't do that intentionally, Judge.
"The Court: I know it, but it was  you see, we don't want to infer from anything that has happened to you here since this trial began as having any relevancy on this occurrence that happened back last year of what this trial is all about. Do you understand the question?
"The Witness: Yes. Can I say something, please, sir? The reason that I didn't remember that it was the day before yesterday was because in the condition I was in yesterday I couldn't  I was very upset.
"That's why Mr. Prebish, and you said, `Was it yesterday or what?' you have to understand the condition I was in yesterday.
"The Court: I understand.
"The Witness: And I never would do anything to in any way put anything in the minds of anybody."
* * * * *
[3] "The Witness: Wait a minute. I have had threats and everything. I can't take much more of this. I really can't. I can't. Phone calls, long distance, private investigators calling my house and speaking to my eight and a half year old brother, my children  Now, this man knows my children's address. He never knew it before. That's not fair to me. He is getting all the justice and I am not even getting any consideration.

"I don't want him to know where I work. If he goes free and I don't want him to know anything about me.
"The Court: Just control yourself. We are not concerned with that about this case.
"The Witness: I know you are not.
"The Court: All right. All right. Just control yourself.
"Mr. Prebish: May we take a few minutes' recess?
"Mr. Jacobs: Your Honor, I prefer to go on. I think we can continue.
"Hold on.
"The Witness: I am through.
"The Court: All right. Let's take a recess. Take charge of the jury."
* * * * *
"The Court: I want to make a few explanations here. As you well know, this trial has grown out of the charge that you have made against the Defendant here, Mr. Bertone, which is serious.
"You have certain rights in this matter and he has certain rights in the matter. As part of his rights, he has the right to be defended by an attorney in this charge that you have brought, and that is why we have the lawsuit. I am sure that you appreciate that.
"The Witness: I do, yes.
"The Court: You can further appreciate that in the process of the trial of a lawsuit and the lawyers defending Mr. Bertone in this matter, there will be much questioning, there will be  has been much questioning to you, which has been vexing to you, I am sure, as well as the cross examination here probably may seem that way to you. Isn't that right?
"The Witness: (Witness nods head in the affirmative.)
"The Court: But the point is that he has a right to be represented by an attorney who has the right to ask these questions. I do not think he has gone beyond the realm of his duty to represent this man in this matter. Do you understand?
"The Witness: Yes.
"The Court: Being on a witness stand is a strain on you, even at best, and under these conditions it is very much of a strain on you. Now, the outburst that you had just before we had this last recess is volunteering information or making statements, I should say, that are in a sense prejudicial to his rights in the matter. Whether they are true or not true is not the point, you understand, because they are not material to the issues we are concerned with here, and they could be well prejudicial to his rights in the matter.
"What I would like to now know is if we continue with the trial there are going to be other questions. Do you feel like you could continue without engaging in another outburst like that? I don't for a minute consider that it was deliberate on your part, don't misunderstand me."
* * * * *
"The Court: All right. Lady and gentlemen of the jury, the witness has made certain statements just prior to your filing out of the courtroom when we last recessed, which were voluntarily made. They were not in response to any question from any of the attorneys, and were concerning matters  the statements were concerning matters which are entirely irrelevant and immaterial to any of the issues in this case. I therefore instruct you to totally disregard these statements made and do not regard them or consider them in any regard whatsoever in your deliberations and in the testimony that is delivered here in this courtroom. I am striking them from the record as far as your consideration of these facts."