243 So.2d 216 (1971)
Salvatore Charles GRECH, Appellant,
v.
The STATE of Florida, Appellee.
No. 69-854.
District Court of Appeal of Florida, Third District.
January 19, 1971.
Rehearing Denied February 10, 1971.
*217 Miller & Russell, Leonard Moriber, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Jesse J. McCrary, Jr., and Melvin Grossman, Asst. Attys. Gen., for appellee.
Before PEARSON, C.J., and HENDRY and SWANN, JJ.
PER CURIAM.
Defendant, Salvatore Grech, and three others were informed against for breaking and entering, robbery and assault with intent to commit murder. See related cases of State v. Grech, Fla.App. 1969, 219 So.2d 96 and Gagnon v. State, Fla.App. 1970, 243 So.2d 219. He and Paul Gagnon, one of the three others, were tried together over his objection.
Defendant Grech was convicted in a trial by jury of breaking and entering with intent to commit a felony, robbery, and aggravated assault and was sentenced to a term of fifteen years in the state penitentiary.
The defendant seeks reversal of the judgment and sentence on numerous grounds. The principal grounds upon which he argues for reversal are that the court erred in that it: excused a class of persons from jury service prior to the selection of the jury; improperly denied severance; allowed in-court identifications where a prior line-up identification had been suppressed; admitted into evidence testimony linking the co-defendants before the crime; refused to reduce the charge to attempted robbery; failed to grant a mistrial for prosecutor's prejudicial indirect references to defendant's failure to testify; and refused to instruct as to the lesser included offense of trespass. We find no reversible error and affirm.
The trial of defendant commenced on Yom Kippur, the holiest day of the Hebrew religion. Prior to the jury selection, defendant objected to prospective jurors of that faith being excused, alleging deprivation of the constitutional right to a trial by his peers. The record indicates that the defendant is a member of the white race of Italian descent, but his religion does not appear of record. The trial judge explained:
"* * * Anyone of the Hebrew faith that requested of the Court that they be excused because of Yom Kippur, the Court had excused them along with other individuals who were on the jury venire who had a valid reason to be excused, such as physical or medical reasons supported by a doctor's statement.
"So this was done through the usual procedure through the Clerk of the Court."
The defendant relies upon Cassell v. Texas (1950), 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839, and Simmons v. State, Fla.App. 1966, 182 So.2d 442. Cassell v. Texas reversed a conviction on the grounds that the indictment was defective where Negro grand jurors had been purposefully excluded. Cassell v. Texas has been followed in Florida. Simmons v. State held it was reversible error to deny the defendant's motion to quash the jury panel, reasoning that the venire from which it was drawn was not selected according to law where "common laborers" were "unlawfully excluded from the master lists." In the instant case Jewish jurors were chosen from the list of veniremen to participate on the day of the trial, and were excused on the prospective juror's request by the court for a valid reason, just as if they had a valid *218 medical or physical reason. In North v. State, Fla. 1952, 65 So.2d 77, at pp. 79-80, the Florida Supreme Court found that the trial judge did not abuse his broad discretion in excusing prospective jurors for reasons personal to such individuals. In State v. Ceaser (1966), 249 La. 435, 187 So.2d 432, 436-437, the trial judge's excusing large numbers of jury veniremen was not systematic exclusion. See also Scott v. State, Fla.App. 1968, 207 So.2d 493. On the basis of the foregoing authorities, we hold that there was no systematic exclusion.
Defendant further urged before the trial court that severance should have been granted because of incompatibility of counsel and allegedly inculpatory statements made by the co-defendant, and on appeal also argues existence of antagonistic defenses. The general rule is that a point cannot be raised on appeal for the first time. Bertone v. State, Fla.App. 1969, 224 So.2d 400, 403. We assume, arguendo, that the error has been properly preserved on appeal. Nevertheless, application for severance is addressed to the sound discretion of the trial court, and the order will not be reversed except for palpable abuse of judicial discretion. Reddick v. State, Fla.App. 1966, 190 So.2d 340, 347 and 349 (and cases cited); Woodside v. State, Fla.App. 1968, 206 So.2d 426, 429.
The record does not reveal incompatibility of counsel. The attorneys joined in motions and objections. They both attempted to discredit identifications by the victims and offered a joint exhibit. Gretch offered to proceed to trial, if the severance had been granted, even though the voir dire of the jury had been conducted substantially by counsel for the co-defendant. Each attorney asserted that his defendant was not at the scene of the crime.
Largely because each defendant asserted his absence from the scene of the crime, each co-defendant's evidence fails to implicate the other and is not antagonistic. Defendant fails to indicate with specificity at what point the defenses were so antagonistic or inculpatory as to be prejudicial to the extent of reversible error. Woodside v. State, Fla.App. 1968, 206 So.2d 426, 429.
Next, as to the validity of the in-court identification, Mrs. White made an in-court identification of the defendant Grech. At the time of such in-court identification and testimony about Grech's conduct during the robbery, counsel made no objection. However, he adopted the motion by Gagnon's counsel to strike the in-court identification even to the extent of not arguing such motion himself, but relying upon that advanced by the Public Defender. We assume, but do not decide, that the point was properly preserved and not waived.
The U.S. Supreme Court, in deciding whether an in-court identification by an eyewitness will be allowed over a pre-trial identification by photograph, has said that the test is whether, on a case by case basis, such identification would have been so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247. The same test was applied to an in-court identification by an eyewitness after a previously tainted line-up identification, and the identification was allowed. Coleman v. Alabama (1970), 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed. 387, 394.
The voir dire examination of Mrs. White shows that her eyewitness' in-court identification of the defendant "did not stem from an identification procedure `so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification'"; rather, such in-court identification was based upon an independent ground. In Coleman v. Alabama (1970), 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed. 387, 394, the U.S. Supreme Court allowed an in-court identification, because there was no error in trial court finding that it was not based upon a prior tainted police line-up and the trial court could have found *219 that line-up identification was based upon observation of the crime and not the tainted police line-up. Alternatively, the introduction of such identification was harmless error. § 924.33, Fla. Stat., F.S.A.
Jill Henderson (who was ten years old) testified about the robbery, and made what the defendant characterizes as an uncertain and speculative in-court identification of the defendant because of the use of the words "I think" and "I believe." The trial court's rulings on the questions of this in-court identification prefaced by such language was not reversible error. Martin v. State, 100 Fla. 16, 129 So. 112, 116; Eizenman v. State, Fla.App. 1961, 132 So.2d 763; see also: VI Wigmore on Evidence, § 1906, p. 575, and III Wigmore on Evidence, § 729, pp. 62-63 (3d Ed., 1940).
The defendant contends that the trial court erred in not granting his motion for mistrial based upon indirect references to the failure of the defendant to take the stand on his own behalf, which defendant alleges are prejudicial. We set out the statements and rhetorical questions in a note.[1] We have considered the prosecutor's remarks and the defendant's contentions, and we find that no prejudicial error has been demonstrated. See: Chapman v. State of California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Sanders v. State, Fla.App. 1970, 241 So.2d 430.
Therefore, the judgment and sentence are affirmed.
Affirmed.
NOTES
[1] "How did a soaking wet Salvatore Grech find himself on this beautiful Sunday morning on the 28th of January lying on a landing, a gun by his side, soaken wet, lying on the landing with his feet dangling down, no shoes and socks on? What was he doing on that landing?

"* * * if these two defendants are innocent, you must agree with me that this was to be the most colossal coincidence that anyone has ever conceived, that on the day of a massive house robbery, on a day when people are running into a house, shooting their way out of a house, on that particular day are Gagnon and Grech and Murphy and Greenwood, all within the vicinity of 4221 Pinetree Drive, one lying on the landing soaking wet with his gun loaded, the other co-incidentally walking on the west, the east, the north, the south side of Pinetree Drive  whatever you want  lives in Hialeah, but on this particular Sunday morning he was taking a beautiful walk on Miami Beach. And what would the other two defendants say they were doing?"